# Illinois Official Reports

## Appellate Court

---

### *People v. Brown-Engel*, 2018 IL App (3d) 160368

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CORBIN A.M. BROWN-ENGEL, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0368 |
| Filed | December 4, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 14-CF-303; the Hon. Walter D. Braud, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Nate Nieman, of Rock Island, for appellant.<br><br>John L. McGehee, State's Attorney, of Rock Island (Patrick Delfino, David J. Robinson, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justices McDade and Schmidt concurred in the judgment and opinion. |

**OPINION**

¶ 1      Defendant, Corbin A.M. Brown-Engel, appeals his conviction and sentence. Defendant contends that defense counsel provided ineffective assistance for failing to object to the admission of other bad acts evidence. Alternatively, defendant contends that the admission of such evidence amounted to plain error. We affirm.

¶ 2                                 FACTS

¶ 3      Initially, the State charged defendant with aggravated criminal sexual abuse (720 ILCS 5/11-1.60(b) (West 2014)). The charge alleged that defendant, who was 17 years of age or older, committed an act of sexual conduct with the victim, T.L.B., who was under 13 years of age, in that defendant knowingly touched the vagina of T.L.B.

¶ 4      The State then filed a motion *in limine* to admit evidence pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.3 (West 2014)). The motion sought to introduce evidence T.L.B. disclosed during an interview at the children's advocacy center that defendant touched her vagina on prior occasions and that defendant put his penis in her mouth. The State moved to have this evidence admitted to show motive and propensity to commit the charged offense. Although the State tendered the prior bad act testimony as propensity evidence under section 115-7.3, the State made clear that it intended to use the evidence for other purposes. When presenting the motion, the State explained to the court,

> "In this specific case we are looking for course of conduct evidence essentially, bad act evidence related to the specific victim in the charging document and the defendant. *** It creates information for the jury in this case to understand what prompted the disclosure, lack of mistake—there's so many factors that it would touch upon ***."

After holding a hearing, the circuit court denied the State's motion as to T.L.B.'s allegation that defendant put his penis in her mouth due to the lack of detail provided regarding the incident. The court, however, did permit the State to present T.L.B.'s testimony regarding four prior instances of sexual misconduct: defendant licking T.L.B., putting his hands down her pants, putting his hand on her buttocks, and putting his hand "on" her pants.

¶ 5      Prior to the bench trial, the State moved to amend the information to charge defendant with attempted aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2014)). The amended charge alleged that defendant committed attempted aggravated criminal sexual abuse by performing a substantial step towards the commission of the act of sexual conduct in that defendant knowingly touched the body on or near the vagina of T.L.B. for the purposes of his sexual gratification. Defendant did not object. The circuit court allowed the amendment, and the cause proceeded to trial.[1]

¶ 6      T.L.B. testified that her parents were separated, and she would stay with her father, Thomas B. Jr., at her grandparents' house every other weekend. T.L.B.'s cousin, defendant, lived at the house, and T.L.B. would "hang out" with defendant. When T.L.B. and defendant were together, they would watch television or play on an iPad. According to T.L.B., every time

---

[1]The State was later allowed to amend the information to specify that the criminal act occurred between February and April 2014.

her father would go outside the house to smoke a cigarette, she would go into defendant's bedroom and defendant would touch her "in [her] inappropriate places."

¶ 7 In April 2014, T.L.B. was at her grandparents' house sitting "crisscross applesauce," when defendant lifted her dress and tried to touch her inappropriately. T.L.B. pushed defendant's hand away before he could touch her. T.L.B. was wearing underwear, but defendant's hand did not go on or underneath her underwear. Defendant touched the "left inside thigh close to [T.L.B.'s] pubic area." T.L.B.'s father entered the room, and T.L.B. stated, "Don't touch me like that again." T.L.B.'s father asked her what she meant, and defendant responded, "I just hugged her to say good job on playing the game." T.L.B.'s father replied, "Okay. Just be more specific of when you say don't touch me like that."

¶ 8 Next, T.L.B.'s father exited the house and started his vehicle. Defendant gestured at T.L.B. by crossing his fingers and telling her not to tell her father. T.L.B. told defendant not to do it again then she left the house. T.L.B. entered her father's vehicle so that he could drive her to her mother's house. T.L.B. told her father what happened with defendant and how defendant had previously touched her inappropriately.

¶ 9 Regarding defendant's attempt to lift her dress and touch T.L.B., she stated that she believed defendant was going to touch her on her "private part" because defendant had previously touched her there. According to T.L.B., defendant "would always put his hand and sometimes go under [her], like, under [her] underwear and touch [her] in [her] private part." T.L.B. stated that defendant would touch her "[e]very weekend that [she was] with [her] dad" "multiple times in a day." When defendant touched her, she would be sitting on his bed watching television. Defendant would unbutton her pants and "go in and touch [her]." T.L.B. stated that defendant would "just feel around" her vagina. Defendant would stop when T.L.B.'s father would return. T.L.B. did not say anything to her father when he entered the room because she "didn't know what was going on."

¶ 10 Thomas Jr. testified that he was T.L.B.'s father and defendant's uncle. Thomas Jr. and defendant were close, and he was never concerned about leaving T.L.B. and defendant alone together. He testified that there were occasions when he and T.L.B. would be in defendant's bedroom. Thomas Jr. would leave the room to smoke or for some other reason. On April 13, 2014, T.L.B. told Thomas Jr. that defendant touched her, and she later indicated that defendant touched her in her crotch area. Initially, Thomas Jr. thought that defendant only touched T.L.B. by hugging her or touching T.L.B.'s shoulders because T.L.B. only generally stated that defendant "touched" her, and both defendant and T.L.B. indicated that was the type of touching that occurred. T.L.B. later talked about "good" touching and "bad" touching, and T.L.B. told him that defendant touched her "badly." Thomas Jr. then drove T.L.B. to her mother's house and Thomas Jr. told her mother what had happened. Thomas Jr. then went to tell T.L.B.'s grandparents.

¶ 11 On cross-examination, Thomas Jr. testified that T.L.B. never provided specifics regarding how and when defendant touched her. Thomas Jr. also testified that he had seen T.L.B. and defendant hug and T.L.B. had never told him that she did not want to be around defendant or act like she did not want to be around defendant.

¶ 12 Cheryl B., T.L.B.'s grandmother, testified that she had a difficult time remembering the conversation that occurred after she was told about defendant touching T.L.B. Cheryl did not recall telling an investigating detective that she heard defendant saying that he "f*** up" when

he was confronted with T.L.B.'s accusations. She also did not recall telling the detective that defendant said, "Grandma, I'm so sorry" or "I'm a piece of s***."

¶ 13 Thomas B. Sr., T.L.B.'s grandfather, testified that he recalled Thomas Jr. informing him of T.L.B.'s allegations regarding defendant. The only thing Thomas Sr. recalled was defendant putting his head in his hands stating, "I'm a piece of s***."

¶ 14 Defendant testified on his own behalf. Defendant was living with Thomas Sr. and Cheryl during the time in question. Defendant stated that when he saw T.L.B. he would give her high-fives and hugs, but denied ever touching or attempting to touch T.L.B.'s vagina or any part of her body for his sexual gratification. On the day in question, defendant stated that he only saw T.L.B. for approximately 10 minutes. Defendant went to sleep that night but was later awoken by Cheryl. Cheryl confronted defendant with T.L.B.'s accusations. Defendant responded, "[t]his is b***." Defendant never said "I'm a piece of s***."

¶ 15 In its closing argument, the State referenced T.L.B.'s testimony regarding defendant's prior bad acts and argued, "with the prior bad acts, which are not part of anything but just simply showing this purpose for the attempted touching. That's the relevance of the prior bad acts is to show the Defendant's knowledge when he's attempting to touch [T.L.B.'s] vagina." Ultimately, the circuit court found defendant guilty of attempted aggravated criminal sexual abuse. Subsequently, defendant filed a motion to reconsider. Following the arguments of the parties, the court denied defendant's motion. In denying the motion, the court commented,

> "There was no question in my mind, and if I implied otherwise, I'm telling you now, but that on April 13th [defendant] put his hand on her thigh or her hip. No question but that that happened. But to make that a criminal abuse touch, it needed to have the earlier touches, where he actually put his hands on her vagina."

The circuit court sentenced defendant to 20 months' probation.

¶ 16                                              ANALYSIS

¶ 17 On appeal, defendant contends that the circuit court committed plain error or, alternatively, counsel provided ineffective assistance by allowing T.L.B. to testify to prior sexual misconduct between her and defendant. Specifically, defendant contends that it was in error to allow the State to present this evidence to prove defendant's propensity to commit the charged crime under section 115-7.3 of the Code (725 ILCS 5/115-7.3 (West 2014)) because defendant was not charged with one of the enumerated offenses for which this section applies. Upon review, we find that the evidence in question was not admissible to establish propensity under section 115-7.3. However, we hold that the circuit court did not abuse its discretion in allowing the admission of this evidence because it was admissible to establish defendant's intent and absence of an innocent state pursuant to Illinois Rule of Evidence 404 (eff. Jan. 1, 2011).

¶ 18 Propensity evidence is generally inadmissible, however, section 115-7.3 of the Code (725 ILCS 5/115-7.3 (West 2014)) allows the prosecution to offer evidence of other crimes involving certain sexual offenses. This section applies to criminal cases in which a defendant is "accused of predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, aggravated criminal sexual abuse, criminal sexual abuse, child pornography, aggravated child pornography, criminal transmission of HIV, or child abduction." *Id.* § 115-7.3(a)(1). This section also applies to criminal cases in which "the defendant is tried or retried for any of the offenses formerly known as rape, deviate sexual

assault, indecent liberties with a child, or aggravated indecent liberties with a child." *Id.* § 115-7.3(a)(3).

¶ 19 At the outset, we note that the parties' sole focus on appeal is the admissibility of T.L.B.'s testimony pursuant to section 115-7.3. Specifically, the parties focus their arguments on whether the offense for which defendant was charged falls within one of the offenses enumerated in section 115-7.3. For example, the State argues that the evidence was admissible because the charged offense (attempted aggravated criminal sexual abuse) is akin to the offense of indecent liberties with a child—the State does not argue that this evidence was admissible for any other purpose. Attempted aggravated criminal sexual abuse and indecent liberties with a child are two distinct offenses with differing elements. Therefore, we find that the evidence was inadmissible to show defendant's propensity under section 115-7.3 because it is not an enumerated offense.

¶ 20 Our analysis does not end there as evidence admissible for one purpose is not affected by inadmissibility for another. *People v. Carter*, 38 Ill. 2d 496, 504 (1967). Although we find that this evidence was inadmissible to establish defendant's propensity under section 115-7.3 of the Code, we hold that the evidence was admissible to establish defendant's intent and absence of an innocent state of mind pursuant to Illinois Rule of Evidence 404 (eff. Jan. 1, 2011). See *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995) ("As a reviewing court, we can sustain the decision of a lower court on any grounds which are called for by the record, regardless of whether the lower court relied on those grounds and regardless of whether the lower court's reasoning was correct.").

¶ 21 Our supreme court has repeatedly held that evidence of other crimes or bad acts is admissible if it is relevant for any purpose other than to show a defendant's propensity to commit crimes. *People v. Wilson*, 214 Ill. 2d 127, 135 (2005). Rule 404(b) provides that evidence of other crimes, wrongs, or acts may be admissible for purposes other than to show propensity, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Other crimes or bad acts evidence may also be permissibly used to show, by similar acts or incidents, that the act in question was not performed inadvertently, accidently, involuntarily, or without guilty knowledge. 1 John W. Strong, McCormick on Evidence § 190, at 660, 664 (5th ed. 1999). Where such other crimes or bad acts evidence is offered, it is admissible so long as it bears some threshold similarity to the crime charged. *People v. Cruz*, 162 Ill. 2d 314, 348-49 (1994). The admissibility of other crimes or bad acts evidence rests within the sound discretion of the circuit court, and its decision on the matter will not be disturbed absent a clear abuse of discretion. *People v. Heard*, 187 Ill. 2d 36, 58 (1999).

¶ 22 Here, the other bad acts testimony of T.L.B. fits squarely within the recognized exceptions, which allow such evidence to show defendant's intent or to show that the act in question was not performed inadvertently, accidently, involuntarily, or without guilty knowledge. Defendant was charged with attempted aggravated criminal sexual abuse. To commit this offense, defendant must have taken a substantial step toward the commission of the offense of aggravated criminal sexual abuse. A person commits aggravated criminal sexual abuse if "that person is 17 years of age or over and: (i) commits an act of sexual conduct with a victim who is under 13 years of age." 720 ILCS 5/11-1.60(c)(1)(i) (West 2014). An act of "sexual conduct" is defined as

"any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim or the accused, or any part of the body of a child under 13 years of age *** for the purpose of sexual gratification or arousal of the victim or the accused." *Id.* § 11-0.1.

¶ 23    As charged in this case, attempted aggravated criminal sexual abuse is a specific intent crime. The State must show defendant intentionally or knowingly made a substantial step toward touching T.L.B.'s vagina for purposes of sexual gratification. Defendant's intent was at issue at trial because he acknowledges prior innocent contact with T.L.B. but maintained that he never attempted to touch T.L.B.'s vagina. T.L.B.'s testimony regarding defendant's prior sexual misconduct with her was highly relevant as the charged act was nearly identical to the prior acts. Therefore, T.L.B.'s testimony regarding the prior incidents with defendant was relevant to show that defendant's attempted touching was done for the purpose of his sexual arousal or gratification.

¶ 24    Additionally, the evidence of other bad acts provided context to the circumstances surrounding the charged offense. Prohibiting T.L.B.'s testimony regarding the prior bad acts would have made the charged incident appear isolated and unfairly strain the credibility of T.L.B.'s testimony concerning the charged offense. See, *e.g.*, *People v. Tannahill*, 152 Ill. App. 3d 882, 887 (1987) (evidence of defendant's prior sexual offenses against complainant admissible to demonstrate the context of the charged conduct); *People v. Perez*, 2012 IL App (2d) 100865, ¶ 50 (evidence of defendant's prior bad acts admissible to show the context in which the charged acts occurred and demonstrated defendant's pattern of conduct). Without the evidence of defendant's prior touching of T.L.B., the trier of fact would have only heard that defendant tried to touch T.L.B. without any context for the reason T.L.B. pushed defendant's hand away. Given the previously positive relationship between T.L.B. and defendant, this event would have appeared to come out of nowhere, straining T.L.B.'s credibility. Similarly, without evidence of the prior incidents, the trier of fact would have lacked information regarding how T.L.B. believed that defendant was attempting to touch her for purposes of his sexual gratification or arousal. In other words, the evidence of the prior bad acts assisted the trier of fact in understanding defendant's action as to the charged offense. Consequently, we find no abuse of discretion in the admission of T.L.B.'s testimony concerning defendant's prior sexual misconduct to establish defendant's intent under Rule 404.

¶ 25    In coming to this conclusion, we note that defendant here suffered no prejudice because the possibility of prejudice inherent in a jury trial does not exist in a bench trial because it is presumed that the circuit court considers only admissible evidence. *People v. Davis*, 260 Ill. App. 3d 176, 192 (1994). The circuit court noted that there was no question that defendant touched T.L.B. on her thigh or hip, but it considered defendant's prior touching of T.L.B. to establish that defendant intended to touch T.L.B. for his sexual gratification or arousal as to the charged offense. The court's comments demonstrate that the prior bad acts evidence was only considered for the proper purpose of determining defendant's intent—not defendant's propensity to commit crimes.

¶ 26    Accordingly, having found that T.L.B.'s testimony regarding defendant's prior bad acts was admissible under Rule 404, there can be no plain error. See *People v. Wade*, 131 Ill. 2d 370, 376 (1989). Nor can counsel be ineffective for failing to object to the admission of this evidence. See *People v. Henderson*, 2013 IL 114040, ¶ 11 (failure to establish deficient

performance precludes a finding of ineffective assistance of counsel).

¶ 27                                    CONCLUSION

¶ 28            The judgment of the circuit court of Rock Island County is affirmed.

¶ 29            Affirmed.