**NOTICE**

Decision filed 11/14/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200400-U

NO. 5-20-0400

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

**NOTICE**

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 19-CF-279 |
| | ) | |
| JERRY B. EZEBUIROH, | ) | Honorable |
| | ) | Allan F. Lolie Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the judgment of the circuit court, where defendant's right to a speedy trial was not violated. Additionally, the court did not abuse its discretion by allowing the State to elicit testimony about defendant's aggressiveness as a prior bad act, and defense counsel was not ineffective, where defendant failed to demonstrate prejudice.

¶ 2    Defendant, Jerry B. Ezebuiroh, appeals his conviction and sentence after a jury in the circuit court of Marion County found him guilty of aggravated battery of a correctional officer (720 ILCS 5/12-3.05(d)(4) (West 2018)). While defendant's case was pending, the Illinois Supreme Court entered emergency orders in response to the COVID-19 pandemic, regarding section 103-5(a) of the Code of Criminal Procedure of 1963 (Code), known as the Speedy Trial Act (Act) (725 ILCS 5/103-5(a) (West 2020)). Defendant argues on appeal that he was denied his statutory right to a speedy trial, where the Illinois Supreme Court and the chief judge of the Fourth

1

Judicial Circuit lacked constitutional and statutory authority to suspend the operation of the speedy-trial statute. Additionally, defendant argues that the court erroneously permitted the State to elicit irrelevant and unfairly prejudicial testimony under Illinois Rule of Evidence 404 (eff. Jan. 1, 2011) that defendant previously behaved aggressively, and that defense counsel was ineffective for failing to exercise a peremptory strike against a juror. For the following reasons, we affirm.

¶ 3                                    I. Background

¶ 4      We present only those facts necessary to our disposition of this appeal, which are as follows. On July 29, 2019, the State charged defendant with the offense of aggravated battery of a correctional officer, a Class 2 felony, whereby defendant, on July 27, 2019, without legal justification, knowingly made physical contact of an insulting or provoking nature when defendant grabbed and scratched Officer Cody Casner, a Marion County correctional officer engaged in the execution of his official duties (720 ILCS 5/12-3.05(d)(4) (West 2018)). At the time, defendant was incarcerated in the Marion County jail for the offense of domestic battery on a distinctly separate case (No. 19-CF-134). The court appointed Attorney Craig Griffin to represent defendant in the case at issue.

¶ 5      On August 20, 2019, the circuit court held a preliminary hearing where Officer Casner testified to the following. On July 27, 2019, at approximately 7:05 p.m., a Marion County correctional officer tased defendant, placed defendant in handcuffs, removed defendant from "D-block," and relocated him to a single solitary cell near the booking area in "R-4." At approximately 7:40 p.m., Officer Casner approached defendant's cell in the booking area to remove his handcuffs. Officer Casner first "popped the chuck[ ]hole," a small hatch between the inmate and guard, and then requested defendant to "put his cuffs by the chuck[ ]hole *** to uncuff him." Defendant complied. He placed his back against the chuck hole to allow Officer Casner to remove his

2

handcuffs. After Officer Casner uncuffed one of defendant's hands, defendant pulled away from him, pulling Officer Casner's hands through the chuck hole and then grabbing Officer Casner's left hand. After the exchange, Officer Casner's hands and arms were scratched, scraped, and bloody.

¶ 6     After the circuit court found probable cause, defendant, represented by Attorney Griffin, waived formal arraignment, demanded a jury trial, and requested an October 2019 setting. The court set defendant's jury trial for October 15, 2019.

¶ 7     On September 24, 2019, the circuit court held a pretrial hearing. At the outset of the hearing, defendant, proceeding *pro se*, claimed that Attorney Griffin failed to listen to him on multiple occasions and refused to file motions at defendant's request. The court admonished defendant that he was entitled to representation by counsel, but defendant was not entitled to choose his public defender. Following admonishments, the court vacated Attorney Griffin's appointment.

¶ 8     On September 26, 2019, the State filed a motion *in limine*. The State requested the circuit court proceed with the charge of aggravated battery, not the offense of domestic battery (No. 19-CF-134), at the next available trial setting.

¶ 9     On October 3, 2019, defendant filed several *pro se* motions in the circuit court. In particular, he filed a "Motion for Recruitment of Counsel," because he was unable to afford private counsel. Defendant, claiming he was disabled and had mental health issues, filed a motion requesting the court appoint an expert to assist him in understanding the proceedings and in communicating with his attorney. Due to a long history of mental health issues, defendant claimed he was not receiving necessary medication while incarcerated.

¶ 10     On October 3, 2019, the circuit court held a pretrial hearing. In referencing defendant's

motions, the court stated the following:

> "THE COURT: Now, the last time you were here though, sir, you told us that you
> didn't want an attorney. Now, today you are filing a motion telling me that you want an
> attorney. Which way is it?
> DEFENDANT EZEBUIROH: Because when it happened it happened so fast that I
> couldn't really concentrate with him asking me questions, so I don't know how to answer
> it at that period of time.
> THE COURT: You understand if I were to grant the motion for counsel that it
> would delay your jury trial which is scheduled for October 15th?
> DEFENDANT EZEBUIROH: Yes, ma'am.
> THE COURT: And that that delay would be attributed to you. And that's a fancy
> way of saying that you are the one that caused the delay, not the state's attorney[']s office.
> Do you understand that?
> DEFENDANT EZEBUIROH: Yes, ma'am."

The court informed defendant it would re-appoint counsel to represent him. After defendant

affirmed that he understood, the court stated: "[A]gain, you understand that that will cause a delay

in your jury trial which is currently scheduled for October 15th?" Defendant acknowledged that

he understood. The court vacated the jury setting, re-appointed Attorney Griffin to represent

defendant, and confirmed that the record would show delay attributable to defendant.

¶ 11     On October 8, 2019, the circuit court held a pretrial hearing. At the outset, Attorney Griffin

requested a December 2019 setting for defendant's jury trial with a pretrial hearing prior to the

start date. The court granted defendant's request and reset defendant's trial for December 14, 2019.

¶ 12     On November 19, 2019, defendant, represented by counsel, filed a motion requesting the

circuit court to appoint a psychiatrist or psychologist to evaluate his sanity at the time of the alleged

offense. That same day, the court held a pretrial hearing. At the hearing, Attorney Griffin requested

that the court appoint Dr. Daniel Cuneo to evaluate defendant. Attorney Griffin also requested that

the court continue defendant's trial to January 2020, with the delay attributable to defendant.

Following the court's admonishment, defendant acknowledged that he understood. Without

4

objection by the State, the court granted defendant's motion to continue, appointed Dr. Cuneo, vacated the December 2019 setting, and set defendant's jury trial for January 21, 2020.

¶ 13    On January 9, 2020, the circuit court held a pretrial hearing. At the hearing, Attorney Griffin moved the court to continue defendant's trial. The court admonished defendant that any delay would be attributable to him. Defendant acknowledged that he understood. Without objection by the State, the court granted defendant's motion and reset his jury trial for February 10, 2020.

¶ 14    On January 28, 2020, defendant filed several *pro se* motions, including a motion for new counsel and a "Motion for Recruitment of Counsel," requesting, again, that the circuit court appoint an expert to assist him, due to a disability, in understanding the proceedings and communicating and cooperating with his attorney. Additionally, defendant filed a motion for a 30-day continuance to hire legal representation.

¶ 15    On January 28, 2020, the circuit court held a pretrial hearing. At the hearing, defendant informed the court that he wished to proceed *pro se*. After admonishing defendant that the court did not find grounds for removing Attorney Griffin, the court advised against defendant's decision to proceed *pro se*. Despite this, defendant elected to proceed without counsel. The court, with both parties present, confirmed that defendant's jury trial was set for February 10, 2020. The court vacated Attorney Griffin's appointment.

¶ 16    On February 3, 2020, the State filed three motions *in limine* (second, third, and fourth motions *in limine*). Relevant to this appeal, the State's fourth motion *in limine* requested that the circuit court bar defendant and any other witnesses from testifying to the events that occurred at 7:05 p.m. on July 27, 2019, prior to the alleged offense against Officer Casner. The State also requested that the court bar defendant from questioning witnesses about the same events.

5

¶ 17    On February 4, 2020, at the pretrial hearing, the circuit court acknowledged defendant's January 28, 2020, motion for a 30-day continuance. Defendant informed the court that he needed additional time to hire an attorney. The following colloquy took place:

> "THE COURT: *** Now, sir, you understand that you have a right to a speedy trial?
> DEFENDANT EZEBUIROH: Yes, sir.
> THE COURT: And do you understand that if you delay this trial[,] it will not run against your speedy trial rights? In other words, the delay will be charged to you which means you will be held in custody for a longer period of time. Do you understand that?
> DEFENDANT EZEBUIROH: Yes, sir.
> THE COURT: And with that understanding, are you pursuing the motion to continue?
> DEFENDANT EZEBUIROH: For a 30[-]day continuance?
> THE COURT: Yeah.
> DEFENDANT EZEBUIROH: Yes, sir.
> THE COURT: So[,] you understand that the 30 days will not run against your speedy trial demand, delay will be to you?
> DEFENDANT EZEBUIROH: Yes, sir."

The court granted defendant's motion to continue and reset defendant's jury trial for March 9, 2020. The court informed defendant on the record: "[A]t some point in time you are either going to have to produce an attorney or proceed *pro se.*" Defendant acknowledged that he understood.

¶ 18    On February 27, 2020, defendant appeared *pro se* at the pretrial hearing. The circuit court granted defendant's request to re-appoint counsel and re-appointed Attorney Griffin to represent defendant. Defendant informed the court that he filed a civil suit against Attorney Griffin in federal court. The court stated that "no one has been alerted to that, sir, so no one knows about that here." The court refused to reschedule defendant's jury trial, informing him that his trial would start on March 9, 2020. Defendant proceeded to state that he wanted a new attorney because he refused to work with Attorney Griffin. After the court informed him that he could represent himself *pro se*, hire his own private attorney, or work with Attorney Griffin, defendant accused the judge of discrimination, calling the judge a "[r]acist mother f***er" and a "clan member." The court found

6

defendant in indirect civil contempt of court. The court vacated Attorney Griffin's appointment and appointed Attorney Emily Fitch.

¶ 19 The circuit court held a pretrial hearing on March 4, 2020. At the outset of the hearing, Attorney Fitch moved to continue defendant's jury trial, requesting additional time to prepare. After much back and forth between the court and defendant, defendant agreed to the continuance, and the court rescheduled his jury trial to April 14, 2020.

¶ 20 On March 17, 2020, in response to the COVID-19 pandemic, the Illinois Supreme Court entered an order directing courts to implement "temporary procedures to minimize the impact of COVID-19 on the court system," stating that "[e]ssential court matters and proceedings shall continue to be heard by the Illinois courts." Ill. S. Ct., M.R. 30370 (eff. Mar. 17, 2020). Three days later, on March 20, 2020, the Illinois Supreme Court issued a second supervisory order authorizing chief circuit court judges to continue trial dates for the next 60 days and until further order of the court. Ill. S. Ct., M.R. 30370 (eff. Mar. 20, 2020). The order of the Illinois Supreme Court on March 20, 2020, specifically noted that any delay resulting from the emergency continuances "shall not be attributable to either the State or the defendant for purposes of section 103-5 of the Code." *Id.*

¶ 21 On March 27, 2020, defendant filed a motion *in limine*, requesting that the circuit court prohibit the admission of any and all evidence or testimony of defendant's prior convictions at trial. That same day, defendant filed a second motion *in limine*, requesting the court to enter an order barring the State and any of its witnesses from referencing or introducing any evidence on the basis of defendant's incarceration in the Marion County jail for the offense of domestic battery (No. 19-CF-134).

¶ 22      On March 30, 2020, the chief judge of the Fourth Judicial Circuit entered an administrative order, in accordance with the Illinois Supreme Court's March 20, 2020, order (Ill. S. Ct., M.R. 30370 (eff. Mar. 20, 2020)), continuing all civil and criminal jury trials until May 23, 2020, or until further order by the Illinois Supreme Court without this delay attributable to the State or defendants. In response, on March 31, 2020, the circuit court of Marion County continued defendant's jury trial due to an administrative order entered by the chief judge of the Fourth Judicial Circuit, as a result of the COVID-19 pandemic. The court reset defendant's jury trial for June 8, 2020.

¶ 23      On April 3, 2020, the Illinois Supreme Court amended the March 20, 2020, order to allow circuit courts to continue trials until further order by the court with no delay attributable to the State or defendants. Ill. S. Ct., M.R. 30370 (eff. Apr. 3, 2020). Four days later on April 7, 2020, the Illinois Supreme Court amended its March 20, 2020, and April 3, 2020, orders, stating that the "continuances occasioned by this Order serve the ends of justice and outweigh the best interests of the public and defendants in a speedy trial." Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020). The court further stated that "such continuances shall be excluded from speedy trial computations contained in section 103-5 of the Code ***. Statutory time restrictions in [the Act] *** shall be tolled until further order of this Court." *Id.*

¶ 24      On May 21, 2020, the circuit court, over defendant's objection, vacated his June 8, 2020, jury trial setting, pursuant to the supervisory and administrative orders issued with regard to the COVID-19 pandemic. The court reset defendant's trial for July 13, 2020.

¶ 25      On July 2, 2020, the circuit court held a pretrial hearing. The parties confirmed that defendant's jury trial was set for July 13, 2020, and Attorney Fitch informed the court of her intention to file a motion regarding defendant's speedy trial rights.

¶ 26    On July 7, 2020, defendant filed a "Motion for Discharge and Dismissal," arguing that he neither asked for, approved, or agreed to many of the continuances from September 24, 2019, through March 4, 2020, nor the continuances on March 31, 2020, and May 21, 2020, due to the administrative orders. Defendant asserted that, "[r]egardless of whether some of these continuances were or should have been attributed to the Defendant, the fact remains that more than 120 days have passed since Defendant was arrested, excluding time attributable to the Defendant." Defendant argued that the various administrative orders exceeded the judiciary's constitutional and statutory authority, effectively making new law by suspending the speedy-trial statute. Defendant argued that the continuances entered in accordance with the administrative orders should be counted against the State. Defendant also requested his release from custody *instanter*, and that the circuit court dismiss with prejudice the charge against him for the offense of aggravated battery of a correctional officer. Additionally, the State filed its fifth motion *in limine* on July 7, 2020, requesting that the court allow the State to read into evidence Officer Casner's August 20, 2019, sworn testimony, since Officer Casner was an active-duty armed serviceman and unavailable to testify. The court granted the State's motion without objection.

¶ 27    On July 9, 2020, the circuit court held a hearing on defendant's motion for discharge and dismissal on speedy trial grounds. At the hearing, Attorney Fitch rested on the defense's motion, offering no additional argument before the court. The State, in response, stated that the need for the administrative orders "was beyond our control. We were ordered not to have trials." The State maintained that, although it had no case law to argue, given the COVID-19 pandemic caused new issues in the court system, the Illinois Supreme Court appropriately exercised its power by entering a supervisory order. The court denied defendant's motion.

¶ 28    The circuit court held defendant's two-day jury trial on July 14, 2020, and July 15, 2020. At the outset of the trial on July 14, 2020, the State informed the court that it offered defendant a plea deal. Specifically, the State offered defendant two years in prison with credit for time served in exchange for defendant's plea of guilty to a Class 4 felony. Defendant rejected the State's offer. The court then proceeded to *voir dire*.

¶ 29    During *voir dire*, and relevant to this appeal, the circuit court inquired if any prospective jurors knew Officer Casner. Prospective juror Autumn Respondek indicated that she was best friends with Officer Casner's sister. Defendant's argument on appeal is based on the following colloquy which took place during *voir dire*:

> "THE COURT: Have you had any discussions with his sister or with him about this case?
> PROSPECTIVE JUROR [RESPONDEK]: No.
> THE COURT: She says no. Anything about being best friends with one of the witnesses—and in fact[,] this case it is the alleged victim, as I read the charge—anything about that relationship that would make it difficult for you to be fair and impartial to either side?
> PROSPECTIVE JUROR [RESPONDEK]: No.
> THE COURT: So[,] if the State's Attorney did not prove [defendant] guilty beyond a reasonable doubt, would you be able to say not guilty?
> PROSPECTIVE JUROR [RESPONDEK]: Yes.
> THE COURT: And would that cause you trouble with your best friend[,] Mr. Casner's sister?
> PROSPECTIVE JUROR [RESPONDEK]: No.
> THE COURT: So[,] you're not worried about that?
> PROSPECTIVE JUROR [RESPONDEK]: (indicating)
> THE COURT: She says no. Very good."

Additionally, Respondek indicated that her cousin was a police officer in Mt. Vernon, Illinois, but she did not discuss the case with him.

¶ 30    On July 15, 2020, defendant filed a third motion *in limine*, requesting the circuit court to bar any evidence or testimony about defendant's aggressive behavior on July 27, 2019, before the alleged altercation with Officer Casner. That day, prior to the start of the second day of defendant's

jury trial, the court heard argument on defendant's third motion *in limine*. The State argued that standard protocol at the Marion County jail was to handcuff aggressive inmates, thus, Officer Casner would testify that, prior to the incident at issue, another officer handcuffed defendant for aggressive behavior. The court denied defendant's motion, stating that the State's fourth motion *in limine* requested the court to bar defendant and any of other witnesses from testifying to the events at 7:05 p.m. on July 27, 2019, which took place prior to the alleged offense against Officer Casner. The court, however, determined that it was important for the jury to understand why defendant was initially handcuffed, especially given that the State alleged defendant was aggressive in committing aggravated battery of a correctional officer. The State clarified that it intended only for Officer Casner to explain how the jail handles aggressive inmates, which is to handcuff inmates after they engage in aggressive behavior.

¶ 31    On July 15, 2020, the second day of trial, the circuit court heard testimony from two witnesses. Before calling its first witness, Kenny Benzing, the State clarified that Benzing was advised of the court's ruling regarding defendant's third motion *in limine*, advising the witness "not to go into great detail regarding the reason why the protocol was being followed." Rather, the State informed the court that Benzing was advised to say that "it was a protocol for an aggressive inmate." The court admonished the jury and the parties proceeded to opening statements.

¶ 32    Following opening statements, the State called Benzing, the Marion County jail administrator, who testified to the following. On July 27, 2019, the Marion County jail called Administrator Benzing to inform him that defendant attacked Officer Casner. Following this brief introduction, the State read Officer Casner's August 20, 2019, testimony into evidence before the court and in the presence of the jury.

11

¶ 33 Following the admission of Officer Casner's prior testimony into evidence, Administrator Benzing testified to the following. Administrator Benzing stated that he witnessed Officer Casner's injuries at the hospital and then confirmed that the photos of Officer Casner's injuries accurately depicted his injuries that day. The State then introduced into evidence two videos, one depicting defendant's holding cell and the other of the booking area, where Officer Casner was standing. Administrator Benzing testified that he reviewed the video surveillance, indicating that the video of Officer Casner was shorter and more limited because it recorded only movement. The video of the holding cell, however, ran continuously and showed defendant's back to the chuck hole with his arms through the door. Administrator Benzing testified that the Marion County jail had a protocol for aggressive inmates, requiring an officer to handcuff an aggressive inmate, place the inmate in a solitary cell, and then "uncuffed through the chuck hole to prevent further injury to or possible injury to inmate or an officer." Administrator Benzing confirmed that the video depicting Officer Casner showed Officer Casner reaching his hands through the chuck hole to uncuff defendant, which was the appropriate jail protocol to follow with an aggressive inmate. The State played both videos for the jury.

¶ 34 On cross-examination, Administrator Benzing testified that if an inmate's handcuffs are too tight, the officer can loosen the cuffs with a cuff key. Additionally, he indicated that it is possible for handcuffs to get too tight if bumped into something.

¶ 35 On redirect, Administrator Benzing testified that Officer Casner acted appropriately and followed protocol when he attempted to remove defendant's handcuffs. Following the close of the State's evidence, Attorney Fitch moved for directed verdict, which the circuit court denied.

¶ 36 Next, Attorney Fitch called defendant, who testified to the following. Defendant testified that he placed his back against the chuck hole and placed his hands through the opening to have

12

his handcuffs removed. While Officer Casner uncuffed one hand, "the other handcuff squeezed down tight," which caused defendant pain, so he pulled away. He claimed that the handcuff got tighter as he pulled away. Defendant claimed he never touched Officer Casner's hand but attempted to grab the other end of the handcuff to decrease his pain. The following colloquy took place:

"Q. [DEFENSE COUNSEL:] Now, in the video there is a point where you reach your hand out *** and it looks like you're touching Officer Casner's hand. Can you explain what was happening right there?
A. [DEFENDANT:] Well, I was handcuffed to two different handcuffs, and like when I was pulling—whenever I was pulling it, it made pressure to my hand. So[,] the officer had the one side of the handcuff—well, the wrist of the handcuff. And the hit— same wrist of the handcuff pulling me. So[,] he could let go because my wrist was tightening. And, when I got it loose[,] I went and sit [*sic*] down.
Q. So, what were you trying to do when you reached your hand out?
A. *** I was trying to grab the other end of the handcuffs.
Q. And is that what you grabbed?
A. Yes, ma'am.
Q. Did you ever touch Officer Casner's hand?
A. No, ma'am."

¶ 37 On cross-examination, defendant confirmed that he was not in pain when Officer Casner started to remove the handcuffs. Defendant confirmed that the video depicted Officer Casner attempting to uncuff both of defendant's hands. He then confirmed that Officer Casner uncuffed one of his hands before defendant pulled away. The following discussion took place:

"Q. [STATE'S ATTORNEY:] He had one [of your hands] uncuffed, didn't he?
A. [DEFENDANT:] Yes, sir.
Q. That's when you pulled away?
A. I don't know how to answer that. While he was handcuffing the arm, the other one got tighter. And it got tighter.
Q. But you didn't pull away until he uncuffed the first handcuff, correct?
A. Yes, sir."

After closing arguments, a unanimous jury found defendant guilty of aggravated battery of a correctional officer.

¶ 38    On August 10, 2020, defendant filed a motion for a new trial, arguing, *inter alia*, that the circuit court erred in denying his third motion *in limine* and motion for discharge and dismissal based on speedy trial grounds. Defendant did not argue that Attorney Fitch was ineffective for failing to exercise a peremptory strike against a juror.

¶ 39    On September 24, 2020, the circuit court held defendant's sentencing hearing. Before proceeding to sentencing, the court heard argument on defendant's motion for a new trial, which the court denied. Following a sentencing hearing that same day, the court sentenced defendant to seven years in the Illinois Department of Corrections, followed by two years of mandatory supervised release.

¶ 40    On October 7, 2020, defendant filed a *pro se* posttrial motion. Citing *People v. Krankel*, 102 Ill. 2d 181 (1984), defendant argued that Attorney Fitch was ineffective for allegedly failing to (1) object to "new video evidence" never disclosed to defendant prior to trial when the State introduced such evidence to the jury, (2) object at trial to Officer Casner testifying as an unavailable witness, and (3) discuss trial strategy and communicate properly with defendant.

¶ 41    On October 13, 2020, defendant, represented by Attorney Fitch, filed a motion to reconsider sentence, which the circuit court denied on December 3, 2020. Defendant filed a timely appeal.

¶ 42                                    II. Analysis

¶ 43    On appeal, defendant argues that he was denied his statutory right to a speedy trial. Additionally, he contends that the trial court erroneously permitted the State to elicit irrelevant and inadmissible testimony under Illinois Rule of Evidence 404 (eff. Jan. 1, 2011) that constituted other bad acts evidence, and that defense counsel provided ineffective assistance for failing to exercise a peremptory strike against a juror who was close friends with Officer Casner's sister.

14

¶ 44    A. Speedy Trial Rights

¶ 45    With regard to defendant's speedy trial rights, defendant argues that the circuit court erred by denying his motion for discharge and dismissal on speedy trial grounds, where he was tried more than 120 days after he was taken into custody, resulting from supervisory and administrative orders. Specifically, defendant argues that "[t]he nature and scope of the statutory right to a speedy trial—and any exceptions thereto—is a matter that the Illinois Constitution leaves to the legislature to define." As such, defendant contends that, because the judiciary lacks power to amend or suspend his statutory right to a speedy trial, the general administrative and supervisory orders were unconstitutional. We disagree.

¶ 46    Criminal defendants in Illinois have both constitutional (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8) and statutory rights (725 ILCS 5/103-5(a) (West 2020)) to a speedy trial. *People v. Sykes*, 2017 IL App (1st) 150023, ¶ 35. The State has a responsibility to bring a defendant to trial within the appropriate 120-day statutory period. *Id.* ¶ 36. Unless we discern "a clear abuse of discretion, this court must sustain the trial court's determination as to whom delay is attributed." *People v. Jones*, 273 Ill. App. 3d 377, 381 (1995). Whether a defendant's statutory right to a speedy trial was violated is reviewed *de novo*. *Sykes*, 2017 IL App (1st) 150023, ¶ 35 (citing *People v. Van Schoyck*, 232 Ill. 2d 330, 335 (2009)).

¶ 47    The Illinois Supreme Court's orders allowed for the tolling of the speedy-trial term in response to the COVID-19 pandemic. *People v. Mayfield*, 2021 IL App (2d) 200603, ¶ 17. Our colleagues in the Second District recently determined that general continuances made pursuant to the Illinois Supreme Court's administrative orders regarding the pandemic have the effect of tolling speedy trial computations. *Id.* ¶ 21. We agree.

15

¶ 48    Contrary to defendant's assertions, our supreme court did not overstep its authority by suspending the operation of the Act, where "[t]he scheduling of criminal trials is a matter of procedure within the realm of our supreme court's primary constitutional authority" (*id.*), especially provided that the Illinois Supreme Court "retains primary constitutional authority over court procedure" (*Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1997)). As the Second District determined, where the supreme court exercises its power to regulate the scheduling of trials, "legislation in conflict must yield." *Mayfield*, 2021 IL App (2d) 200603, ¶ 25. Accordingly, we hold that the supreme court had the authority to toll the legislated speedy-trial term in response to the COVID-19 pandemic and the circumstances facing the court system at the time the orders were entered.

¶ 49    B. Evidence of Other Bad Acts

¶ 50    Next, defendant asserts that the circuit court erroneously denied defendant's third motion *in limine*, permitting the State to elicit testimony that he behaved aggressively prior to the incident at issue. Defendant states that "the fact that [defendant] was having handcuffs removed through a chuck hole was, of course, necessary to explain the context" for the incident between defendant and Officer Casner. According to defendant, the "reason *why* that procedure was being employed, however, was completely irrelevant." (Emphasis in original.) Thus, the introduction of evidence by the State that defendant engaged in aggressive behavior before the charged incident was irrelevant to any proper purpose and amounted to reversible error, where the evidence was used to show his bad character and his propensity to engage in aggressive behavior. We disagree.

¶ 51    Our supreme court has repeatedly held that evidence of other crimes or bad acts is admissible if it is relevant for any purpose other than to show a defendant's propensity to commit crimes. *People v. Wilson*, 214 Ill. 2d 127, 135 (2005). Illinois Rule of Evidence 404(b) (eff. Jan.

16

1, 2011) provides that evidence of other crimes, wrongs, or acts may be admissible for purposes other than to show propensity, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. "Other crimes or bad acts evidence may also be permissibly used to show, by similar acts or incidents, that the act in question was not performed inadvertently, accidently, involuntarily, or without guilty knowledge." *People v. Brown-Engel*, 2018 IL App (3d) 160368, ¶ 21 (citing 1 John W. Strong, McCormick on Evidence § 190, at 660, 664 (5th ed. 1999)). The admissibility of other crimes or bad acts evidence rests within the sound discretion of the circuit court, and its decision on the matter will not be disturbed absent a clear abuse of discretion. *People v. Heard*, 187 Ill. 2d 36, 58 (1999).

¶ 52    Here, the prior bad act testimony of Officer Casner and Administrator Benzing fits squarely within the recognized exceptions, which allows such evidence to show defendant's intent or to show that the act in question was not performed inadvertently, accidently, involuntarily, or without guilty knowledge. To sustain a conviction for aggravated battery, the State needed to show that defendant knowingly made physical contact of an insulting or provoking nature with Officer Casner. Defendant's intent was at issue at trial because he claimed he pulled away from Officer Casner in an attempt to avoid pain that he experienced during the uncuffing procedure, not to cause Officer Casner harm.

¶ 53    Moreover, defendant claimed he never touched Officer Casner's hand. Instead, he intended to grab the other end of the handcuff to decrease his pain caused by the tight cuff on his restrained wrist. Officer Casner's and Administrator Benzing's testimonies that defendant engaged in aggressive behavior prior to the incident, along with the admitted video evidence demonstrating the subsequent incident with Officer Casner, were highly relevant to show defendant intended to make physical contact of a provoking nature with Officer Casner, which resulted in injuries to his

17

arms and hands. Therefore, the testimonies of Officer Casner and Administrator Benzing regarding defendant's aggressiveness as a prior bad act were relevant to show intent and lack of mistake.

¶ 54　Additionally, the evidence of prior bad acts provided context to the circumstances surrounding the charged offense. Importantly, in explaining the context, the testimonies of Officer Casner and Administrator Benzing did not introduce the details of the earlier incident in which defendant was aggressive. Rather, the State elicited testimony from Officer Casner and Administrator Benzing to explain that, due to prior, undisclosed aggressive behavior, defendant was handcuffed, removed from D-block, and escorted to a holding cell in the booking area. Moreover, consistent with Marion County jail protocol, both witnesses testified consistently that Officer Casner attempted to remove defendant's handcuffs in the holding cell, with defendant's back to Officer Casner and his hands through a chuck hole. Without this testimony, the charged incident would appear isolated and possibly cause credibility issues for Officer Casner and Administrator Benzing concerning the charged offense. See *Brown-Engel*, 2018 IL App (3d) 160368, ¶ 24 (evidence of defendant's prior acts was admissible to show the context of the charged act). Without evidence of defendant's prior aggressiveness, the jury would have likely lacked the necessary information to understand why Officer Casner could not remove defendant's handcuffs face-to-face with the cell door open. Consequently, we find no abuse of discretion in the admission of Officer Casner's and Administrator Benzing's testimonies concerning defendant's prior bad act to establish intent under Illinois Rule of Evidence 404 (eff. Jan. 1, 2011). Accordingly, we cannot conclude that the circuit court abused its discretion in denying defendant's third motion *in limine*.

¶ 55　C. Ineffective Assistance of Counsel

¶ 56　Lastly, defendant argues ineffective assistance of counsel. Specifically, defendant contends that Attorney Fitch was ineffective for failing to exercise a peremptory strike during *voir dire*

18

against Respondek, a juror in defendant's case, who was close friends with Officer Casner's sister. Specifically, defendant asserts that counsel's failure to strike juror Respondek was "inexplicable, unjustifiable, and unreasonable under prevailing professional norms." Moreover, arguing the evidence was not overwhelming against him, defendant asserts "it would have been reasonable for a jury free from the taint of Respondek's relationship with the alleged victim's sister to have returned a verdict of not guilty." We cannot agree.

¶ 57 The ineffectiveness of defense counsel may properly be raised for the first time on appeal. *People v. Jefferson*, 2021 IL App (2d) 190179, ¶ 25 (citing *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24). A reviewing court may, however, abstain from deciding an ineffectiveness claim on direct appeal if the record is not properly developed. *Id.* (citing *People v. Veach*, 2017 IL 120649, ¶ 46). Here, the record is adequate for consideration of defendant's ineffectiveness claim, which we review *de novo*. *Lofton*, 2015 IL App (2d) 130135, ¶ 24 ("Where, as here, the claim of ineffective assistance was not raised in the trial court, our review is *de novo*." (citing *People v. Berrier*, 362 Ill. App. 3d 1153, 1166-67 (2006))).

¶ 58 A defendant alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To satisfy this test, the defendant must establish that his attorney's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced him. *Id.* at 688. Next, to establish prejudice, a defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687. A reasonable probability is one that sufficiently undermines confidence in the outcome of the proceeding. *Id.* at 694. The defendant's failure to satisfy either prong of *Strickland* defeats an ineffective assistance claim. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). Thus, a reviewing court may resolve an ineffective assistance

19

claim based upon only the prejudice component because a lack of prejudice renders irrelevant the issue of counsel's performance. *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998).

¶ 59 In the case at bar, defendant argues defense counsel's failure to excuse Respondek using a peremptory strike was objectively and professionally unreasonable. Defendant also contends that he suffered prejudice as a result of the allegedly deficient performance. According to defendant, "it would have been reasonable for a jury free from the taint of Respondek's relationship with the alleged victim's sister to have returned a verdict of not guilty." We disagree.

¶ 60 Even if we were to assume a deficiency on the part of defense counsel, defendant has not shown the requisite prejudice. The prejudice prong of the *Strickland* test generally requires the defendant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Contrary to defendant's argument, the evidence against defendant was strong. Defendant has failed to demonstrate any clear bias or prejudice held by Respondek against him. Rather, defendant has only stated what he believes is the appearance of such bias because Respondek knew Officer Casner. Defendant has failed to show that the verdict would probably have been different if Respondek had not served as a juror. Instead, the record demonstrates Respondek's impartiality in her response to the circuit court's questioning that she did not discuss the case with Officer Casner's sister and believed she could remain impartial towards defendant in light of her relationship with Officer Casner's sister. Moreover, Respondek responded that she believed she would find defendant not guilty if the State failed to prove him guilty beyond a reasonable doubt, and that a not guilty verdict would not affect her friendship with Officer Casner's sister. For the foregoing reasons, we find defendant was not deprived of his constitutional right to effective assistance of counsel.

¶ 61                                    III. Conclusion

¶ 62    For the reasons stated, we affirm the judgment of the circuit court of Marion County, where defendant's right to a speedy trial was not violated; the court did not abuse its discretion by denying defendant's motion *in limine* and allowing the State to admit relevant testimony about defendant's aggressiveness as a prior bad act to show intent and lack of mistake; and defendant's claim of ineffective assistance of counsel fails, where he failed to demonstrate prejudice.


¶ 63    Affirmed.