2022 IL App (1st) 211192-U

FIFTH DIVISION
NOVEMBER 30, 2022

No. 1-21-1192

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 2059 |
| | ) | |
| DENNIS YOUNG, | ) | Honorable |
| | ) | Angela Munari-Petrone, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Connors and Justice Mitchell concurred in the judgment.

ORDER

¶ 1    *Held*:  The defendant's convictions are affirmed, where the Illinois Supreme Court had the authority to suspend jury trials, tolling the speedy trial clock, and the State proved the defendant guilty beyond a reasonable doubt.

¶ 2    On February 8, 2017, a grand jury indicted the defendant-appellant, Dennis Young, on 23 counts of child pornography. The State moved to *nolle prosequi* counts XV and XVIII prior to trial, proceeding on the remaining 21 counts. Mr. Young requested a jury trial, which was set for March 16, 2020. On March 12, 2020, the parties vacated the March 16, 2020, trial date and set the trial date for April 20, 2020, by agreement. However, due to the COVID-19 pandemic, the parties

continued the trial date multiple times by agreement until May 24, 2021. After a May 24, 2021, jury trial, Mr. Young was found guilty on all counts and, based on the nature of the convictions, was sentenced to an aggregate sentence of 72 years' imprisonment. On appeal, Mr. Young argues that: (1) the orders entered by the Illinois Supreme Court and Chief Judge of the Circuit Court of Cook County temporarily suspending jury trials and tolling delays under the speedy trial statute, violated the separation of powers provision of the Illinois Constitution; and (2) the evidence presented by the State was insufficient for conviction. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4      On January 6, 2017, Mr. Young was arrested. On February 8, 2017, a grand jury indicted Mr. Young, on 23 counts of child pornography: 7 counts of dissemination of child pornography, where the child-victim was under 13 years old (counts I through VII); 10 counts of possession of child pornography, where the child-victim was under 13 years old (counts VIII through XVII); and 6 counts of possession of child pornography, where the child-victim was under 18 years old (counts XVIII through XXIII). The State moved to *nolle prosequi* counts XV and XVIII before trial and proceeded on the remaining 21 counts.

¶ 5      On February 15, 2017, Mr. Young was arraigned on the charges in the circuit court of Cook County. The case was then continued by agreement of the parties multiple times until March 12, 2020. On March 12, 2020, the parties rescheduled the previously set March 16, 2020, trial date to April 20, 2020. On March 17, 2020, the Illinois Supreme Court entered an order in response to the COVID-19 pandemic. Ill. S. Ct., M.R. 30370 (eff. Mar. 17, 2020). That order suspended all court proceedings except for essential or emergency matters. On March 20, 2020, the Illinois Supreme Court entered another order, which stated "[i]n the case of criminal proceedings, any delay

resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section 103-5 of the Code of Criminal Procedure of 1963." Ill. S. Ct., M.R. 30370 (eff. Mar. 20, 2020). On April 3, 2020, the supreme court amended its order allowing

"[t]he Chief Judges of each circuit [to] continue trials until further order of this Court. In the case of criminal proceedings, any delay resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section 103-5 of the Code of Criminal Procedure of 1963 [citation]." Ill. S. Ct., M.R. 30370 (eff. Apr. 3, 2020).

¶ 6    On March 13, 2020, the Chief Judge of the Circuit Court of Cook County, Timothy Evans, ordered that all matters in the Cook County circuit court were "rescheduled and continued for a period of 30 days from the originally scheduled court date," effective March 17, 2020. Cir. Ct. Cook Cty. G.A.O. 2020-01 (eff. Mar. 17, 2020). Through the entry of multiple orders by the Chief Judge of the Circuit Court of Cook County, all jury trials were suspended until March 22, 2021. Cir. Ct. Cook Cty. G.A.O. 2020-02 (eff. July 6, 2020, eff. Sep. 3, 2020, eff. Oct. 16, 2020); Cir. Ct. Cook Cty. G.A.O. 2020-07 (eff. Nov. 23, 2020, eff. Mar. 23, 2021).

¶ 7    On March 31, 2020, pursuant to the orders entered by the Chief Judge of the Circuit Court of Cook County, the trial court entered an order continuing Mr. Young's case to May 5, 2020. The case was later continued to July 22, 2020. Between July 22, 2020, and February 9, 2021, the case was continued three more times, by agreement. However, on each date when the case was continued, Mr. Young reiterated his desire for a jury trial, but he did not file a written demand for trial with the court.

¶ 8    On February 9, 2021, Mr. Young's counsel requested the date of March 3, 2021, for a status hearing on jury trials. His counsel stated that Mr. Young had been waiting for a jury trial for over

a year. At the February 9, 2021, status hearing, his counsel commented on the inability to demand a trial, stating that "our hands are tied by the Supreme Court stripping away the ability to demand [trial]." The trial court then set the status hearing for March 3, 2021, and noted that Mr. Young had been in custody for a while waiting for a jury trial. No written or oral demand for trial was filed by Mr. Young's counsel. At the March 3, 2021, status hearing, the court scheduled the jury trial for May 24, 2021.

¶ 9    On May 24, 2021, the trial court conducted a jury trial. During the trial, the State presented testimony from law enforcement officers of the Internet Crimes Against Children Task Force ("ICAC"): Detectives Charles Hollendoner; Chris Meade; Mark Astrella; James Browne; and Ronald Jasica.

¶ 10    Detective Hollendoner testified about his experience working on child pornography investigations involving a peer-to-peer ("PTP") network called Ares.[1] He testified that law enforcement officers access the Ares PTP network through special software called LE Ares. Unlike Ares, which may download a file from multiple users at once, LE Ares allows officers to download files from a single source or ARES user. Downloading a file from a single user allows officers to investigate which individual is providing the file. Additionally, through LE Ares, officers can "geolocate" a search. He testified that, in other words, it allows officers to search for files made available to download from computers within a specific geographic area, such as Chicago. LE Ares also enables officers to search for specific files by searching for hash values.

---

[1] Ares is the name of a PTP network. PTP networks are file sharing networks that allow computers to connect over the internet in order to share files. Users can use the network to search for, share, and download files with each other. Content is only available to download on a PTP network if another user uploads the content and makes it available to other users. Typically, users download content by connecting to multiple users who provide the same file, which allows users to download the file as quickly as possible.

¶ 11    Detective Hollendoner testified that the hash values are unique identifiers for each file. The identifier is generated using a mathematical algorithm that assigns numbers and letters to each file. If a user copies a file without any modifications, the hash value associated with the file remains the same regardless of the file's name. If a file is modified in any way, the hash value changes. When files have the same hash values, the files are considered identical.

¶ 12    Detective Hollendoner stated that the National Center for Missing and Exploited Children maintains a database of hash values of files suspected of being videos or photographs of child pornography. Law enforcement investigations use these known hash values to search PTP networks and identify users offering child pornography for dissemination. Since LE Ares allows officers to download files from a single source, officers can also obtain the Internet Protocol (IP) address of the user who provided the file for download. He testified that an IP address is similar to a physical address and is based on an individual's geographic location. The IP address remains the same if the computer remains at the same physical location. However, if the device is moved to a different location, the IP address changes to reflect the new location. Law enforcement can determine the physical address associated with the IP address by issuing subpoenas to the internet service provider of the IP address.

¶ 13    Turning to the counts in this case, Detective Hollendoner asserted that, on March 12, 2016, he downloaded the video, associated with count VI and provided the name of the file. He stated that he viewed the file to confirm it depicted child pornography. The video was shown to the jury. The IP address from which the video was downloaded was 73.209.36.218, and the Ares username was anon_49d124da@ares. He also testified that when he viewed the library associated with that ARES username, he viewed a file with the title associated with count III.

¶ 14    Detective Meade testified that, on December 12, 2015, he downloaded the video associated with count III and provided the jury with the title of the video, which was the same as the title that Detective Hollendoner previously mentioned. On September 10, 2016, he also downloaded the file associated with count I and provided the title of the video. He viewed both videos to confirm that they contained child pornography. Both videos were played for the jury. All of the videos in question were downloaded from the 73.209.36.218 IP address associated with the Ares username, anon_49d124da@ares.

¶ 15    Detective Astrella testified that he conducted PTP investigations using LE Ares in June 2016. As a result of that investigation, he identified a person with the IP address 73.209.36.218 and Ares username anon_49d124a@ares offering to make child pornography available for download. Detective Astrella identified for the jury, four videos that he downloaded by file name and one video that he downloaded by hash value. He identified the video files associated with counts I, IV, V, and VII by file names and identified the video associated with count II by the hash value, "EKUCXEK40KDLQDKVFZNOTDLPVLKEF3YK." These videos were shown to the jury.

¶ 16    On October 26, 2016, Detective Astrella reviewed the files from his investigation and issued a subpoena to the internet service provider, Comcast, to determine the IP subscriber. The information provided to him was that the IP address was listed to Mr. Young at the registered address of 8050 South Peoria Street, Chicago, IL 60620.

¶ 17    On December 13, 2016, Detective Browne, after being informed about the investigation by Detective Astrella, sought a search warrant for 8050 South Peoria Street, Chicago, Illinois, for items related to the dissemination or possession of child pornography. During the December 14, 2016, search of the home located at 8050 South Peoria Street, Chicago, Illinois, he and other

officers recovered three computers, a Dell computer and two hand-built computers. In addition to the computers, officers also found pill bottles; a Sprint bill; and items of mail, which had Mr. Young's name on them, addressed to the South Peoria Street address. Officers also recovered a Comcast bill with Mr. Young's account number.

¶ 18    Detective Browne testified that he conducted a forensic preview[2] on Mr. Young's Dell computer. From the forensic preview, he also obtained the hash values. Detective Browne stated that law enforcement investigations use a common hash algorithm to identify hash values. The algorithm contains two subsets, "base 16," which produces a unique 16 characters, and "base 32," which produces a unique 32 characters. Therefore, the same file will have two different hash values depending on which algorithm is used to generate the identifier. The information provided by Detective Astrella, which had been used to obtain the search warrant, directed Detective Browne to search for certain hash values. The warrant provided hash values for various counts: "NJN3AGPQAS4YLZ7PPTUPLTD5ESLXYJT4" (count I); "3FGGGEKPIO6GQ7MBPJNRRK TWJTALJ2VK" (count IV); "RD4ZD7BG6IZJXKFB6TASU2CNRBD70I3R" (count V); and "65DJL4DEVFAKZMPAAMQ3F5AZ4WLPRPAP" (count VII).

¶ 19    On December 19, 2016, Detective Browne replicated the hard drive on Mr. Young's Dell computer and found several images of child pornography. The file names for these images started with "$R" and were associated with counts VIII through XIV; XVI through XVII; and XIX through XXIII. Of these files, Detective Browne identified a video file titled "$RMAEZ2" associated with count XIV. That video file was published to the jury. He also testified about the forensic reports generated from the forensic preview of each video and photograph recovered from

_____

[2] A forensic preview is a way to examine the hard drive, in a format like a thumb drive or cell phone, in a way that does not change any of the electronic data.

the hard drive. In the forensic report, which was admitted as an exhibit and published to the jury, Detective Browne identified the title of the video, pertaining to count XIV, as "$RMAEX2."

¶ 20    In addition to the images, Detective Browne stated that he was familiar with the videos and the hash values of the videos downloaded by Detectives Astrella; Hollendoner; and Meade. He said that he found artifacts of each of those videos associated with counts I through VII on the hard drive of the Dell computer recovered as a result of the search warrant. The hash values for these videos were: "NJN3EGPQAS4YLZ7PPTUPLTD5ESLXYJT4" (Count I); "EKUCXEK4OKDL QDKVFZNOTDLPVLKEF3YK" (Count II); "D25PF26HGII6MZBBBEXYNBSMHHLN3ESB " (Count III); "3JGGGEKPIO6GQ7MBPJNRRKTWJTALI2VK" (Count IV);"RD4ZD7BG6IZJ XKFB6TASU2CNRBD7OI3R" (Count V); "U6CAGM7TDW3P7YJCXSEHOA3QELXFXRIE " (Count VI); "65DJL4DEVFAKZMPAAMQ3F5AZ4WLPRPAP" (Count VII).    His    forensic analysis also revealed the original titles of the videos when they were downloaded. Those titles matched the titles mentioned by the other detectives. After completing his forensic preview, Detective Browne then provided the hard drive to the FBI's forensic lab for further analysis.

¶ 21    Detective Jasica testified that while the officers were engaged in the search of Mr. Young's home, Mr. Young returned to his home and agreed to answer questions. Mr. Young stated that he had lived alone at the South Peoria Street residence for 8 to 10 years, and though his niece and nephew received mail at that address, they did not live there. Mr. Young admitted to using several PTP networks, including Ares. He said that he uses ARES to download music and pornography.

¶ 22    After the State rested, Mr. Young elected not to testify or present additional evidence. The jury instructions as to counts I, III, IV, V, VI, and XIV referred to the video files by their file names, while the jury instruction for count II referred to the video file by the hash value, denoted as "EKUCXEK4OKDLQDKVFZNOTDLPVLKEF3YK." The jury returned a guilty verdict on

all counts. The title for the video file associated with count XIV in the jury instructions was listed as "$RMAEX2." On August 11, 2021, Mr. Young filed a motion for a new trial, which was denied. After denying the motion, the trial court sentenced Mr. Young to a 6-year sentence of imprisonment on each of counts I through VII and a 3-year sentence of imprisonment on each of counts VIII through XIV; XVI through XVII; and XIX through XXIII. Each sentence was to run consecutively except for counts XX, XXI, and XXIII, which would run concurrently. The aggregate sentence was 72 years' imprisonment.

¶ 23    On August 13, 2021, Mr. Young filed his notice of appeal.

¶ 24                                    ANALYSIS

¶ 25    We note that we have jurisdiction to consider this matter, as Mr. Young filed a timely notice of appeal. See Ill. S. Ct. R. 606 (eff. July 1, 2017).

¶ 26    Mr. Young argues, on appeal, that the Illinois Supreme Court erred by entering orders tolling the accrual of time under the speedy trial statute and that the State failed to prove his guilt as to counts I, II, III, IV, V, VI, and XIV. We take each issue in turn.

¶ 27                              Speedy Trial Statute

¶ 28    Mr. Young first argues that this court should reverse all of his convictions since the COVID-19 pandemic-related orders suspending jury trials and tolling the speedy trial statute was a violation of the separation of powers provision in the Illinois Constitution of 1970 (Ill. Const. 1970, art. II, § 1), and therefore, the orders were invalid. Accordingly, he argues that his rights under the speedy trial statute (725 ILCS 5/103-5 (West 2016)) were violated and his convictions should be overturned. Mr. Young concedes that he did not preserve this issue by objecting to the continuances and, thus, forfeited the issue. He asks that we consider the issue under the plain error doctrine, arguing that the error was so serious that it deprived him of a substantial right.

- 9 -

Alternatively, he asks us to review his claim under the principle of ineffective assistance of counsel, alleging that his trial counsel's performance was deficient for not objecting to the continuances. We will first review this case under the plain error doctrine.

¶ 29    A defendant's statutory right to a speedy trial is found in section 103-5(a) of the Code of Criminal Procedure of 1963 (Code), which provides that a defendant who is continuously held in custody for an offense must be brought to trial within 120 days, with the exception of delays occasioned by the defendant. 725 ILCS 5/103-5(a) (West 2016). Specifically, that section states that:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2016).

Section 103-5(f) of the Code (725 ILCS 5/103-5(f) (West 2016)) states that:

> "[d]elay occasioned by the defendant shall temporarily suspend for the time of the delay the period within which a person shall be tried as prescribed by subsections (a), (b), or (e) of this Section and on the day of expiration of the delay the said period shall continue at the point at which it was suspended."

¶ 30    The separation of powers provision in the Illinois Constitution states that "[t]he legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Article VI, section 1 of the of the Illinois Constitution provides that "[t]he judicial power is vested in a Supreme Court, an Appellate Court and Circuit[

] Courts." Ill. Const. 1970, art. VI, § 1. Section 16 of that same article of the Illinois Constitution asserts that "[g]eneral administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules." Ill. Const. 1970, art. VI, § 16.

¶ 31    The Second District of the Illinois Appellate Court considered the issue raised by Mr. Young in *People v. Mayfield*, 2021 IL App (2d) 200603. In that case, the defendant was convicted of domestic battery and argued that he was deprived of his statutory speedy trial rights due to emergency orders issued because of the Covid-19 pandemic. *Mayfield*, 2021 IL App (2d) 200603, ¶ 1. The court cited to the orders entered by the Illinois Supreme Court which continued court proceedings except for emergencies. *Mayfield*, 2021 IL App (2d) 200603, ¶ 5. The March 20, 2020, order stated that " '[i]n the case of criminal proceedings, any delay resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section 103-5 of the Code of Criminal Procedure of 1963 [citation].' " *Mayfield*, 2021 IL App (2d) 200603, ¶ 5 (quoting Ill. S. Ct., M.R. 30370 (eff. Mar. 20, 2020)). On April 3, 2020, and April 7, 2020, the Illinois Supreme Court empowered the chief judges of each circuit within the state to continue trials at their discretion until further order of the Illinois Supreme Court. That order tolled the accrual of days attributable to the parties in pending cases under section 103-5 of the Code (725 ILCS 5/103-5 (West 2016), commonly known as the Illinois Speedy Trial Act. *Mayfield*, 2021 IL App (2d) 200603, ¶¶ 5-7. While the defendant in that case argued that the order exceeded the Illinois Supreme Court's authority under the separation of powers provision of the Illinois Constitution, the Second District of the Illinois Appellate Court found that the Illinois Supreme Court's order, regarding the scheduling of criminal trials is a matter of procedure which falls under the Illinois Supreme Court's primary constitutional authority. *Mayfield*, 2021 IL App (2d) 200603,

¶ 21. Accordingly, the Illinois Supreme Court had the authority to toll the time limits for trials under the speedy trial statute. *Mayfield*, 2021 IL App (2d) 200603, ¶ 25.

¶ 32 An exception to the forfeiture rule exists in situations where the alleged error rises to the level of plain error. *People v. Roman*, 2013 IL App (1st) 102853, ¶ 19. Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides that "substantial or what have become known as plain errors may be noticed although they were not brought to the attention of the trial court." (Internal quotation marks omitted.) *People v. Sebby*, 2017 IL 119445, ¶ 48. Under the plain error doctrine, a reviewing court may consider forfeited errors if the evidence was closely balanced or "the error was so egregious that [the] defendant was deprived of a substantial right and thus a fair trial." *Roman*, 2013 IL App (1st) 102853, ¶ 19. First, a defendant must prove there was a clear or obvious error. *Roman*, 2013 IL App (1st) 102853, ¶ 19. The burden of persuasion rests with the defendant, and the first step is to determine whether any error occurred. *Roman*, 2013 IL App (1st) 102853, ¶ 19.

¶ 33 We agree with the rationale in *Mayfield*, 2021 IL App (2d) 200603, that the Illinois Supreme Court's orders were directed toward the scheduling of criminal trials and, as such, fell within the supreme court's constitutional authority. Since the Illinois Supreme Court had authority to enter the orders, they were valid and tolled the speedy trial period. Pursuant to the tolling of the speedy trial statutes, we find that 29 days of delay were not attributable to Mr. Young, and those delays were well within the 120-day statutory limit. We find that there was no speedy trial violation, and thus, no error occurred. Therefore, that argument remains forfeited.

¶ 34 As we have found that there was no violation of the speedy trial statute, even if Mr. Young's counsel objected to the continuances, we cannot find that trial counsel's performance was ineffective. See *People v. Mahaffey*, 194 Ill. 2d 154, 173 (finding that an ineffective assistance of

counsel claim cannot be established where no error occurred), *overruled* on other grounds by *People v. Wrice*, 2012 IL 111860, ¶ 75. We next turn to Mr. Young's other argument.

¶ 35                                Chain of Custody

¶ 36     Mr. Young next argues that the State did not prove counts I through VI beyond a reasonable doubt. He argues that counts I, IV, and V should be overturned since the hash values were different in various parts of the transcript of the proceedings. He further argues that the State did not sufficiently prove counts III and VI because it presented no evidence of hash values, which he claims that the State emphasized was the only way to ensure a video was not altered. In counts XIV and II, he points to discrepancies between the titles or hash values presented.

¶ 37     Mr. Young's argument regarding sufficiency of evidence is akin to a challenge related to whether the police officers in this case maintained a complete chain of custody of the videos taken from Mr. Young's hard drive to the time of trial and whether they were the same videos presented in court. Employing the principle in which our supreme court has held that in cases of controlled substances, before the State can introduce the results of chemical testing, it must present evidence that law enforcement took reasonable protective measures to ensure that the substance recovered was the same substance tested by the forensic chemist for purposes of presentation as evidence. *People v. Alsup*, 241 Ill. 2d 266, 274 (2011). That is essentially the argument that Mr. Young is making here. Specifically, he is arguing that there was insufficient evidence that the videos produced at trial were the same videos as the ones recovered from the hard drive of his computer.

¶ 38     However, the chain of custody principle "does not serve as a challenge to the sufficiency of evidence to support a conviction and is not exempt from forfeiture." *Alsup*, 241 Ill. 2d at 275. The forfeiture rule "is particularly appropriate when a defendant argues that the State failed to lay the proper technical foundation for the admission of evidence for the first time on appeal." *People*

*v. Woods*, 214 Ill. 2d 455, 470 (2005). "Application of forfeiture when a defendant did not object to the chain of custody is particularly appropriate because this failure to object deprives the State of its opportunity to cure any deficiency in the foundation." *People v. Coger*, 2019 IL App (1st) 163250, ¶ 18. Only in the rare circumstances of a complete breakdown in the chain of custody does the alleged error rise to level of plain error. *Woods*, 214 Ill. 2d at 471-72.

¶ 39    Here, Mr. Young did not object to a lack of foundation or note any discrepancy between the police officers' statements about the hash mark values during the trial or even subsequently in a posttrial motion. Therefore, the State did not have any opportunity to address this alleged issue that the hash values from the videos obtained from the hard drive of Mr. Young's computer differed from the downloaded videos, which were presented at trial. As such, he has forfeited review of this issue. Moreover, although Mr. Young does not ask this court to review the error under the plain error doctrine, we note that this error does not rise to the level of a complete breakdown in the chain of custody of the evidence in question.

¶ 40    In this case, Detective Browne acknowledged that he *personally* conducted the forensic analysis of the Dell computer searching for the videos based on the hash values that Detective Astrella and the other detectives provided to him. Detective Browne also testified that he located artifacts from each of those hash values corresponding to counts I through VI. Accordingly, the overwhelming majority of the video file names about which Detective Astrella and the other police officers testified, matched the names of the videos that Detective Browne recovered from the hard drive of Mr. Young's computer except for count II. That count was described in both the jury instructions and trial by its base 32 hash value. Regarding count XIV, Mr. Young alleges that the video shown to the jury was not the one that was downloaded from his computer hard drive, citing the differences in the title testified to by Detective Browne and the jury instructions. However, Mr.

Young fails to note that when looking at the printout of the forensic preview of that video, Mr. Browne testified to the identical title as the jury instructions for count XIV. If he misstated the title before, he corrected it and therefore the alleged error did not rise to the level of a serious error. We note that this error as well as the other errors that Mr. Young states in his sufficiency of the evidence are more than likely scrivener's errors as each "mistake or error," for the most part, is one button away on the keyboard from the correct letter or number. Since Mr. Young cannot point to an actual error that occurred, let alone an error which deprived him of a substantial right, the issue is forfeited and does not fall under an exception to the forfeiture rule. Nonetheless, for the sake of completeness, we will address Mr. Young's argument about each count based on sufficiency of the evidence.

¶ 41                            Sufficiency of the Evidence

¶ 42     When reviewing a challenge to the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "(Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts presented at trial. *McLaurin*, 2020 IL 124563, ¶ 22. "In reviewing the evidence, this court will not retry the defendant, nor will we substitute our judgment for that of the trier of fact." *McLaurin*, 2020 IL 124563, ¶ 22. A defendant's conviction will be reversed only when the evidence is so unreasonable, improbable, or unsatisfactory that it creates *a reasonable doubt of his guilt*. *People v. Newton*, 2018 IL 122958, ¶ 24. A person commits the offense of child pornography as charged in counts I through VI when:

"with the knowledge of the nature or content thereof, reproduces, *disseminates*, *offers to disseminate*, exhibits or possesses with intent to disseminate any film, videotape, photograph or other similar visual reproduction or depiction by computer of any child or person with a severe or profound intellectual disability whom the person knows or reasonably should know to be under the age of 18 or to be a person with a severe or profound intellectual disability, engaged in any activity [that:]

\*\*\*

(i) actually or by simulation engaged in any act of sexual penetration or sexual conduct with any person or animal; or

(ii) actually or by simulation engaged in any act of sexual penetration or sexual conduct involving the sex organs of the child or person with a severe or profound intellectual disability and the mouth, anus, or sex organs of another person or animal; or which involves the mouth, anus or sex organs of the child or person with a severe or profound intellectual disability and the sex organs of another person or animal; or

(iii) actually or by simulation engaged in any act of masturbation; or

(iv) actually or by simulation portrayed as being the object of, or otherwise engaged in, any act of lewd fondling, touching, or caressing involving another person or animal; or

(v) actually or by simulation engaged in any act of excretion or urination within a sexual context; or

(vi) actually or by simulation portrayed or depicted as bound, fettered, or subject to sadistic, masochistic, or sadomasochistic abuse in any sexual context; or

(vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed or transparently clothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast of the child or other person." (Emphasis added.) 720 ILCS 5/11-20.1 (a)(2) (West Supp. 2015).

Disseminate under the statute for child pornography means: "(i) to sell, distribute, exchange or transfer possession, whether with or without consideration or (ii) to make a depiction by computer available for distribution or downloading through the facilities of any telecommunications network or through any other means of transferring computer programs or data to a computer." 720 ILCS 5/11-20.1 (f)(1) (West Supp. 2015).

¶ 43    We first address counts I, II, IV, V, and XIV, where Mr. Young disputes that the State sufficiently proved those counts beyond a reasonable doubt. He alleges that there were discrepancies between the hash mark values of videos shown to the jury during Detective Astrella's testimony and those videos Detective Browne testified that he recovered from the hard drive of Mr. Young's computer. However, assuming *arguendo* that Detective Browne testified to a different hash value in one portion of his testimony regarding the videos that were recovered from Mr. Young's hard drive than the exhibits that were presented to the jury, the State subsequently presented exhibits, which were the actual forensic reports of the recovered evidence. Those exhibits were created by Detective Browne and had the correct hash values. Therefore, looking at the evidence in the light most favorable to the State, we cannot say that there was insufficient evidence that Mr. Young committed the offenses outlined in the specific counts in

question.

¶ 44    Regarding counts III and VI, Mr. Young argues that the State did not sufficiently prove his guilt since it did not present the hash values when it presented the downloaded videos to the jury. Mr. Young again misses the point. The hash values are not part of the evidence that the State had to prove to show that Mr. Young *disseminated* or *offered to disseminate* child pornography. The testimony of the police officers alone was sufficient to convict Mr. Young. Moreover, when Detective Browne did the forensic analysis, he searched for the hash values which had been provided to him by the detectives who downloaded the videos in count III and VI. Detective Browne testified to finding artifacts of those videos on the hard drive of Mr. Young's computer and the forensic report was generated from the analysis of that data.

¶ 45    Regarding count II, Mr. Young argues that the hash value in count II testified to by Detective Astrella and Detective Browne were different. Mr. Young points out that the ninth character in the hash value, about which Detective Astrella testified, was the numeral "0" instead of the letter "O." He states that the other references to count II, including the jury instructions, stated the hash value as "EKUCXEK4OKDLQDKVFZNOTDLPVLKEF3YK," which he claims created a reversible error. However, after a careful review of the transcript and exhibits, we cannot say that there is a difference in the 32-hash value presented by the detectives. Looking at the ninth character, which Mr. Young alleges is the numeral "0" and twentieth character, which Mr. Young seemingly concedes is the letter "O," there is no difference between the two characters. As such, we do not find the State committed an error, which led to insufficient proof as to that count.

¶ 46    Further, regarding the sufficiency of the evidence as to all the referenced counts, Mr. Young does not dispute that the State presented sufficient evidence to prove his guilt beyond a reasonable doubt on the other counts. While the IP address associated with Mr. Young and the

username of the ARES account alone might not have been sufficient to prove that he was the individual who possessed and disseminated the child pornography, it was powerful circumstantial evidence of his identity as the perpetrator, considering that he was in possession of other videos and images containing child pornography. Further, he confessed to using ARES to download pornography. So, while Mr. Young makes a fervent argument in an effort to create an error to support his appeal for a reversal of his conviction, any error was insignificant and could be likened to a scrivener's error. Thus, for all of the reasons explained, we cannot say that the evidence on the counts in question was insufficient to prove Mr. Young guilty beyond a reasonable doubt. Accordingly, we affirm Mr. Young's convictions.

¶ 47                                    CONCLUSION

¶ 48     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 49     Affirmed.