2021 IL App (2d) 200603
No. 2-20-0603
Opinion filed December 27, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-392 |
| GARY K. MAYFIELD, | ) ) | Honorable Mark L. Levitt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial in the circuit court of Lake County, defendant, Gary K. Mayfield, was convicted of domestic battery and was sentenced to a 42-month prison term. While defendant's case was pending, the Illinois Supreme Court entered emergency orders in response to the COVID-19 pandemic, regarding section 103-5(a) of the Code of Criminal Procedure of 1963, commonly known as the Speedy Trial Act (Act) (725 ILCS 5/103-5(a) (West 2020)). Defendant argues on appeal that, even taking those orders into account, his trial was not timely, and we should reverse his conviction. Defendant alternatively argues that our supreme court exceeded its authority by suspending operation of the Act. We disagree and affirm the judgment of the circuit court of Lake County.

¶ 2                                    I. BACKGROUND

¶ 3     In late December 2019, a novel coronavirus sickened dozens in Wuhan, China. Derrick Bryson Taylor, *A Timeline of the Coronavirus Pandemic*, N.Y. Times, Mar. 17, 2021, https://www. nytimes.com/article/coronavirus-timeline.html [https://perma.cc/6AVJ-L43Z]. The first known death was reported on January 11, 2020. *Id.* In February 2020, the disease caused by the coronavirus was given the name "Covid-19." *Id.* The disease spread rapidly beyond China, and by March 2020, the United States had the highest number of confirmed cases—over 80,000— globally. *Id.* On March 9, 2020, Illinois Governor J.B. Pritzker declared every county in Illinois a disaster area. On March 20, 2020, to slow the spread of COVID-19, Governor Pritzker issued an executive order (Exec. Order No. 2020-10, 44 Ill. Reg. 5857 (Mar. 20, 2020), https://www.illinois.gov/government/executive-orders/executive-order.executive-order-number-10.2020.html [https://perma.cc/P7CK-UBVT]) requiring all Illinois residents to stay at home except to perform certain essential activities. Governor Pritzker also ordered all nonessential businesses to cease operations. *Id.* The stay-at-home order ultimately expired on May 29, 2020. See *Documenting Illinois' Path to Recovery from the Coronavirus (COVID-19) Pandemic, 2020-2021*, Ballotpedia, https://ballotpedia.org/Documenting_Illinois%27_path_to_recovery_from_the_coronavirus_(COVID-19)_pandemic,_2020-2021 (last visited Dec. 15, 2021) [https://perma.cc/5ZM2-RNDB]. As of December 1, 2021, there have been over 48 million cases and over 780,000 deaths in the United States. *COVID Data Tracker*, Ctrs. for Disease Control & Prevention, https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last visited Dec. 2, 2021) [https://perma.cc/7JSP-LBE5].

¶ 4     Defendant was arrested early during the COVID-19 pandemic, on February 16, 2020. The court initially scheduled his trial for April 27, 2020. On March 16, 2020, the circuit court of Lake

County entered Administrative Order 20-11 in response to the pandemic. 19th Judicial Cir. Ct. Adm. Order 20-11 (Mar. 16, 2020). The order continued all matters for 28 days. However, "[s]peedy trial term cases" were exempt from the continuances. *Id.* The order provided that those cases would continue to be heard in a specified courtroom. On March 17, 2020, the Illinois Supreme Court entered an order in response to the pandemic. Ill. S. Ct., M.R. 30370 (eff. Mar. 17, 2020). The order directed courts to implement "temporary procedures to minimize the impact of COVID-19 on the court system, while continuing to provide access to justice." *Id.* The order provided that "[e]ssential court matters and proceedings shall continue to be heard by the Illinois courts." *Id.*

¶ 5     On March 20, 2020, the supreme court issued another order, which authorized the chief judges of each circuit to continue trials for the next 60 days and until further order of the court. Ill. S. Ct., M.R. 30370 (eff. Mar. 20, 2020). The order provided that "[i]n the case of criminal proceedings, any delay resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section 103-5 of the Code of Criminal Procedure of 1963 [citation]." *Id.* On April 3, 2020, the supreme court amended the March 20, 2020, order to read:

> "The Chief Judges of each circuit may continue trials until further order of this Court. In the case of criminal proceedings, any delay resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section 103-5 of the Code of Criminal Procedure of 1963 [citation]. In the case of juvenile delinquency proceedings, any delay resulting from this emergency continuance order shall not be attributable to either the State or the juvenile for purposes of section 5-601 of the Illinois Juvenile Court Act [citation]." Ill. S. Ct., M.R. 30370 (eff. Apr. 3, 2020).

¶ 6    On April 6, 2020, the circuit court of Lake County issued Administrative Order 20-23, which continued all matters scheduled before May 18, 2020. 19th Judicial Cir. Ct. Adm. Order 20-23 (Apr. 6, 2020). "Speedy trial term cases" were exempted from the continuances; those cases would continue to be heard in a specified courtroom. *Id.*

¶ 7    On April 7, 2020, the supreme court issued another amended order, which provided as follows:

> "The Chief Judges of each circuit may continue trials until further order of this Court. The continuances occasioned by this Order serve the ends of justice and outweigh the best interests of the public and defendants in a speedy trial. Therefore, such continuances shall be excluded from speedy trial computations contained in section 103-5 of the Code of Criminal Procedure of 1963 [citation] and section 5-601 of the Illinois Juvenile Court Act [citation]. *Statutory time restrictions in section 103-5 of the Code of Criminal Procedure of 1963 and section 5-601 of the Juvenile Court Act shall be tolled until further order of this Court.*" (Emphasis added.) Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020).

¶ 8    On April 27, 2020, the trial court continued defendant's trial.

¶ 9    On May 20, 2020, the supreme court amended its April 7, 2020, order by adding the following language:

> "This provision also applies when a trial is delayed when the court determines proper distancing and facilities limitations prevent the trial from proceeding safely. The judge in the case must find that such limitations necessitated the delay and shall make a record thereof." Ill. S. Ct., M.R. 30370 (eff. May 20, 2020).

¶ 10    On May 22, 2020, the circuit court of Lake County issued Administrative Order 20-31 which incorporated the language of the supreme court's orders and continued all trials in the criminal division. 19th Judicial Cir. Ct. Adm. Order 20-31 (May 22, 2020).

¶ 11    As of May 26, 2020, the case was on the June 1, 2020, trial call, and defendant indicated that he objected to any continuances of that date. On June 1, 2020, defendant demanded trial. The trial court rejected the demand and entered a further continuance. On July 27, 2020, the trial court indicated that it would set the case for trial on August 3, 2020. The State requested a later trial date, but defendant objected. The trial court continued the case to August 13, 2020. On August 11, 2020, defendant filed a motion to dismiss for failure to bring him to trial within the 120-day speedy-trial term. Defendant argued that the speedy-trial term ran from February 16, 2020, until June 1, 2020, which was the date of the first continuance entered by the trial court pursuant to the administrative order entered by the circuit court of Lake County on May 22, 2020, which implemented the supreme court's order tolling the running of the speedy-trial term. Defendant maintained that the speedy-trial term resumed running on July 27, 2020. Defendant alternatively argued that the supreme court acted outside its authority in suspending the speedy-trial term.

¶ 12    On August 31, 2020, the trial court denied the motion to dismiss. The court ruled that, going forward, the time until trial would be attributable to the State. The matter proceeded to a bench trial on September 9, 2020. Defendant was found guilty. In his posttrial motion, he again argued that he was not timely brought to trial. The trial court denied the motion, and this appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    The Act (725 ILCS 5/103-5(a) (West 2020)) provides, in pertinent part:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record."

¶ 15    Defendant first argues that, even if the speedy-trial term is calculated per the applicable administrative orders of the Illinois Supreme Court and the circuit court of Lake County, he was not tried within the requisite period. According to defendant, the speedy-trial term initially ran for 106 days from February 16, 2020, until June 1, 2020. The latter date was the date of the first continuance entered after the circuit court of Lake County entered its May 22, 2020, administrative order implementing the supreme court's order tolling the running of the speedy-trial term. Defendant argues that the speedy-trial term resumed on August 3, 2020, which, according to defendant, was "the first date the [trial] court determined a trial could safely be conducted." According to defendant, the speedy-trial term tolled again eight days later, on August 11, 2020, when he moved to dismiss. The speedy-trial term resumed once more when the motion was denied on August 31, 2020, and continued to run until defendant's trial commenced on September 9, 2020, for a total of 123 days. Thus, according to defendant, he was brought to trial three days too late.

¶ 16    We disagree with defendant's computation. As seen, the supreme court's April 7, 2020, order provided, in pertinent part, "The Chief Judges of each circuit may continue trials until further order of this Court. *** [S]uch continuances shall be excluded from speedy trial computations contained in section 103-5 of the Code of Criminal Procedure of 1963 ***." Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020). On May 22, 2020, the chief judge of the circuit court of Lake County entered an order continuing all trials in the criminal division. 19th Judicial Cir. Ct. Adm. Order 20-31 (May

22, 2020). Under the authority of the supreme court order, that general continuance tolled the speedy-trial term. Nothing in the language of the supreme court order required any action by the trial court to toll the speedy-trial term. Accordingly, even if defendant's computation is otherwise correct (a point we express no view on), the speedy-trial term was first tolled eight days earlier than defendant claims and thus defendant's trial started within the 120-day speedy-trial term.

¶ 17    Defendant alternatively argues that our supreme court overstepped its authority by suspending the operation of the Act. Initially, we disagree with defendant's assertion that the supreme court suspended the operation of the Act. The supreme court's orders allowed for the tolling of the speedy-trial term in response to the emergency circumstances resulting from the pandemic. According to defendant, our supreme court violated the separation of powers doctrine, encroaching upon the legislative branch's power.

¶ 18    Our state constitution provides that "[t]he legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Under article VI, section 1 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, § 1), "[t]he judicial power is vested in a Supreme Court, an Appellate Court and Circuit[ ] Courts." Furthermore, section 16 of article VI (Ill. Const. 1970, art. VI, § 16) provides, in pertinent part, "[g]eneral administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules."

¶ 19    In *Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1997), our supreme court explained:

        "The separation of powers provision does not seek to achieve a complete divorce
        between the branches of government; the purpose of the provision is to prevent the whole
        power of two or more branches from residing in the same hands. [Citation.] There are areas
        in which separate spheres of governmental authority overlap and certain functions are

thereby shared. [Citation.] Where matters of judicial procedure are at issue, the constitutional authority to promulgate procedural rules can be concurrent between the court and the legislature. The legislature may enact laws that complement the authority of the judiciary or that have only a peripheral effect on court administration. [Citation.] Ultimately, however, this court retains primary constitutional authority over court procedure. Consequently, the separation of powers principle is violated when a legislative enactment unduly encroaches upon the inherent powers of the judiciary, or directly and irreconcilably conflicts with a rule of this court on a matter within the court's authority."

¶ 20　In *Kunkel*, our supreme court invalidated a statute requiring personal injury plaintiffs to consent to the release of medical information that was not necessarily relevant to their causes of action. The *Kunkel* court held, *inter alia*, that the General Assembly lacked the power to circumvent the relevance requirement of the supreme court's discovery rules. See *id.* at 531.

¶ 21　The scheduling of criminal trials is a matter of procedure within the realm of our supreme court's primary constitutional authority. Pursuant to *Kunkel*, the court's exercise of that authority through its orders prevails over the Act. Thus, the supreme court had the authority to allow the tolling of the time limits under the Act for bringing criminal defendants to trial. The court exercised that authority in this case in response to a pandemic that threatened the health and safety of millions of Illinois residents.

¶ 22　Defendant cites numerous cases for the general propositions that courts have no legislative power and are thus confined to interpreting and applying statutes as they are written. Defendant relies heavily on *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394 (1998). He also cites *Board of Education of Roxana Community School District No. 1 v. Pollution Control Board*, 2013 IL 115473, ¶ 25. He argues that "the judicial branch has no authority to thwart the legislative

branch by *suspending or reading exemptions into statutes*, so as to make them conform with the court's policy preferences." (Emphasis in original.) Suffice it to say that neither case involves legislation on a subject within the power of the judicial branch. Nor—except for *Newlin v. People*, 221 Ill. 166 (1906)—is such legislation at issue in any of the other cases defendant cites that articulate similar principles of statutory interpretation. See *Citibank, N.A. v. Illinois Department of Revenue*, 2017 IL 121634; *In re Marriage of Turk*, 2014 IL 116730; *DeSmet v. County of Rock Island*, 219 Ill. 2d 497 (2006); *Chirikos v. Yellow Cab Co.*, 87 Ill. App. 3d 569 (1980); *People ex rel. Difanis v. Barr*, 83 Ill. 2d 191 (1980); *Donovan v. Holzman*, 8 Ill. 2d 87 (1956); *Stiska v. City of Chicago*, 405 Ill. 374 (1950); *Smith v. Board of Education of Oswego Community High School District*, 405 Ill. 143 (1950). These cases are simply inapposite.

¶ 23   Defendant also relies on *Newlin*, 221 Ill. 166. In *Newlin*, because of the sickness of the judges, the defendant was not timely brought to trial. Our supreme court reversed the defendant's conviction. The court explained:

"By the section of the statute in question an absolute right is conferred upon a person charged with crime and committed to and imprisoned in jail, to be set at liberty unless tried within the time limited by that section, except where the circumstances exist which by the provisions of that statute require the court to hold the person for trial. Thus is the constitutional guaranty of a speedy trial made effective. To an application under this statute it is not sufficient for the prosecution to say that it was inconvenient or impossible for the judges of the circuit to hold the term of court at the time fixed by the statute. The law of the State gives the judges of the various circuits the right to interchange with each other, hold court for each other and perform each other's duties where they find it necessary or convenient. [Citation.] If the provisions of the law do not insure the transaction of the

business of the courts a remedy may be afforded by the legislature. *We are without power to read into the statute in question an exception which does not appear there.*" (Emphasis added.) *Newlin*, 221 Ill. at 173-74.

¶ 24 The issue in *Newlin*—the illness of particular judges—is in no way comparable to the pandemic that necessitated the entry of the supreme court's orders in this case. In *Newlin*, there was no apparent reason why a judge from another circuit could not have been assigned to preside over the defendant's trial so that it could have proceeded in the time allowed by law. There is no comparable solution to the problem of meeting speedy trial deadlines during a deadly pandemic at a time when every county and every court was operating under the same constraints. A reallocation of judicial personnel or judicial resources would not have addressed the health and safety concerns that necessitated the supreme court's orders in this case. The circumstances existing under the *Newlin* case are distinguishable from the exceptional and urgent circumstances here. The circumstances of this case bring to mind Justice Jackson's statement—the United States Constitution should not be transformed into a suicide pact (*Terminiello v. City of Chicago*, 337 U.S. 1, 37 (1949) (Jackson, J., dissenting, joined by Burton, J.))—which applies in equal force to our state constitution.

¶ 25 Notably, *Newlin* was decided under the Illinois Constitution of 1870, which did not vest the supreme court with "[g]eneral administrative and supervisory authority over all courts" as does section 16 of article VI of our current state constitution. Ill. Const. 1970, art. VI, § 16. *Newlin*'s reasoning also does not appear to reflect the current broad scope of the judicial power, particularly our supreme court's primary constitutional authority over court procedure, as illustrated in *Kunkel*. That authority encompasses the power to regulate the scheduling of trials, and when the supreme

court exercises that authority, legislation in conflict must yield. This principle is entirely consistent with Illinois Supreme Court Rule 1 (eff. July 1, 1982), which defendant cites for this language:

> "General rules apply to both civil and criminal proceedings. The rules on proceedings in the trial court, together with the Civil Practice Law and the Code of Criminal Procedure, shall govern all proceedings in the trial court, except to the extent that the procedure in a particular kind of action is regulated by a statute other than the Civil Practice Law."

Contrary to defendant's insinuation, the supreme court did not subordinate itself to the legislature through Rule 1. In *People ex rel. Sheppard v. Money*, 124 Ill. 2d 265 (1988), the supreme court commented about the scope of the rule: "This court has upheld procedures where the legislature's enactments affect proceedings in an action statutory in origin and nature *as long as they do not conflict with a rule of this court*." (Emphasis added.) *Id.* at 284-85 (section 20 of the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1987, ch. 40, ¶ 2520), which provides for the withholding of income to secure payment of child support, did not violate the separation of powers; the procedures relating to the withholding of income were entirely statutory in origin and nature, and there was no conflict between section 20 and a supreme court rule). Accordingly, we hold that the supreme court had the authority to allow for tolling speedy-trial terms in response to the extraordinary and dire circumstances that existed when the orders were entered.

¶ 26                                    III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 28    Affirmed.

**No. 2-20-0603**

| | |
|---|---|
| **Cite as:** | *People v. Mayfield*, 2021 IL App (2d) 200603 |
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 20-CF-392; the Hon. Mark L. Levitt, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Zachary Wallace, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Eric F. Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and John G. Barrett, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |