**2023 IL 128092**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 128092)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
GARY MAYFIELD, Appellant.

*Opinion filed March 23, 2023.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Cunningham, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1    In March 2020, this court began entering a series of emergency administrative orders to address disruptions to the court system caused by the outbreak of the novel coronavirus (COVID-19). Certain orders authorized the state's circuit courts to toll the time restrictions set forth in section 103-5(a) of the Code of Criminal Procedure

of 1963 (Code) (725 ILCS 5/103-5(a) (West 2020)), commonly known as the speedy-trial statute.

¶ 2    Defendant, Gary Mayfield, was tried and convicted in accordance with the administrative orders' tolling provisions but after the speedy-trial term prescribed by section 103-5(a) had run. Defendant argues the circuit court's noncompliance with the statute compels reversal of his conviction because this court's administrative orders violated the Illinois Constitution's separation-of-powers clause by infringing on the General Assembly's legislative authority. See Ill. Const. 1970, art. II, § 1.

¶ 3    Because section 103-5(a) involves the scheduling of trials, the statute is a matter of court procedure and within this court's constitutional authority over all state courts. Where, as here, a statute and a supreme court rule governing court procedure cannot be reconciled, the statute must give way to the rule. We hold that our orders that tolled the speedy-trial statute did not violate the separation-of-powers clause. Accordingly, we affirm defendant's conviction.

¶ 4                            I. BACKGROUND

¶ 5    Defendant was arrested on February 16, 2020, and charged by indictment with several counts of domestic battery. Defendant remained in custody while awaiting trial, and on March 12, counsel asked for the earliest available trial date. The circuit court scheduled trial for April 27.

¶ 6    Meanwhile, this court began entering a series of emergency orders in response to the ongoing threat of COVID-19. On March 17, we issued general guidelines for Illinois appellate and circuit court procedures. Ill. S. Ct., M.R. 30370 (eff. Mar. 17, 2020). The guidelines were intended to protect the health and safety of court patrons, staff, judges, and the general public. We directed all Illinois courts to implement and update as necessary "temporary procedures to minimize the impact of COVID-19 on the court system, while continuing to provide access to justice." *Id.* The order stated, "Essential court matters and proceedings shall continue to be heard by the Illinois courts." *Id.*

¶ 7     On March 20, this court entered an emergency order authorizing the chief judges of each circuit to continue trials for 60 days and until further order of this court. Ill. S. Ct., M.R. 30370 (eff. Mar. 20, 2020). The order stated, "[i]n the case of criminal proceedings, any delay resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section 103-5 of the [Code] (725 ILCS 5/103-5 (West 2018))." *Id.*

¶ 8     On April 3, this court amended the March 20 order to state:

    "The Chief Judges of each circuit may continue trials until further order of this Court. In the case of criminal proceedings, any delay resulting from this emergency continuance order shall not be attributable to either the State or the defendant for purposes of section 103-5 of the [Code] [citation]. In the case of juvenile delinquency proceedings, any delay resulting from this emergency continuance order shall not be attributable to either the State or the juvenile for purposes of section 5-601 of the Illinois Juvenile Court Act [citation]." Ill. S. Ct., M.R. 30370 (eff. Apr. 3, 2020).

¶ 9     Then, on April 7, we amended the March 20 and April 3 orders to clarify our intent to toll the time restrictions of the speedy-trial statute:

    "The Chief Judges of each circuit may continue trials until further order of this Court. The continuances occasioned by this Order serve the ends of justice and outweigh the best interests of the public and defendants in a speedy trial. Therefore, such continuances shall be excluded from speedy trial computations contained in section 103-5 of the [Code] [citation] and section 5-601 of the Illinois Juvenile Court Act [citation]. Statutory time restrictions in section 103-5 of the [Code] and section 5-601 of the Juvenile Court Act shall be tolled until further order of this Court." Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020).

¶ 10    On May 22, the circuit court of Lake County issued an order that incorporated this court's emergency orders, tolled the speedy-trial statute, and continued all trials in the criminal division. 19th Judicial Cir. Ct. Adm. Order 20-31 (eff. May 22, 2020).

¶ 11    At a hearing four days later, on May 26, defense counsel answered ready for trial and objected to any further delay. At that point, defendant's trial had been

scheduled for June 1, but the circuit court rejected defendant's speedy-trial demand. The court found that proceeding to trial on June 1 would not be realistic because the chief judge had not yet found a practical solution to resume jury trials.

¶ 12	On August 11, defendant moved to dismiss the charges based on a violation of the speedy-trial statute. Defendant argued that, even accounting for the emergency orders of the supreme court and the circuit court, he was not brought to trial within the speedy-trial term. Defendant alternatively argued that the supreme court violated the separation of powers in "suspending" his speedy-trial term.

¶ 13	When filing the emergency orders, this court repeatedly invoked the general administrative and supervisory authority vested in it under article VI, section 16, of the Illinois Constitution, which provides, in relevant part, "[g]eneral administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules." Ill. Const. 1970, art. VI, § 16.

¶ 14	On August 31, the circuit court denied the motion to dismiss but ruled that any additional delay would be attributed to the State. Defendant was found guilty after an in-person bench trial on September 9 and sentenced to 42 months' imprisonment. He renewed his speedy-trial challenge in a posttrial motion, which was denied.

¶ 15	On direct appeal, defendant renewed his argument that the supreme court "overstepped its authority by suspending the operation of the Act." 2021 IL App (2d) 200603, ¶ 17.[1] The appellate court characterized the orders as "tolling" the statute, not "suspending" it. *Id.* The court also rejected defendant's claim that the supreme court had unconstitutionally encroached upon the legislature's authority. The court held that the scheduling of criminal trials is a matter of procedure within the realm of the supreme court's primary constitutional authority over procedure, which prevails over the speedy-trial statute. *Id.* ¶¶ 19-21 (citing *Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1997)). The court also rejected defendant's assertion that the

---

[1]While defendant's direct appeal was pending, this court entered an order restoring the time restrictions of the speedy-trial statute, effective October 1, 2021. Ill. S. Ct., M.R. 30370 (June 30, 2021).

emergency orders "thwarted" the legislative branch by reading exceptions or limitations into the statute. *Id.* ¶ 22.

¶ 16    Defendant petitioned for leave to appeal, which we allowed pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2021).

¶ 17                                      II. ANALYSIS

¶ 18    The right to a speedy trial is fundamental and guaranteed to a defendant under both the sixth amendment and the due process clause of the federal constitution (U.S. Const., amends. VI, XIV; *Klopfer v. North Carolina*, 386 U.S. 213 (1967)), and by article I, section 8, of our state constitution (Ill. Const. 1970, art. I, § 8 ("In criminal prosecutions, the accused shall have the right *** to have a speedy public trial ***.")). *People v. Van Schoyck*, 232 Ill. 2d 330, 335 (2009).

¶ 19    The legislature has conferred an additional speedy-trial right in section 103-5 of the Code, which specifies time periods within which an accused must be brought to trial. See 725 ILCS 5/103-5 (West 2020). The speedy-trial statute provides that, if an incarcerated defendant is not tried within the statutorily defined speedy-trial term, the defendant is entitled to discharge from custody and to the dismissal of the charges. *Id.* §§ 103-5(d), 114-1(a)(1); *People v. Woodrum*, 223 Ill. 2d 286, 299 (2006). The method for calculating the speedy-trial term is set forth, in relevant part, as follows:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2020).

¶ 20    Section 103-5(a) provides a starting point, the date custody begins, and an ending point, 120 days later. *People v. Cross*, 2022 IL 127907, ¶ 20; *People v. Cordell*, 223 Ill. 2d 380, 390 (2006). The 120-day period in which a defendant must be tried runs during that time, but the period is tolled during any time when the defendant causes, contributes to, or otherwise agrees to a delay. *Cross*, 2022 IL

- 5 -

127907, ¶ 20; *Woodrum*, 223 Ill. 2d at 299. A pretrial delay caused or contributed to by the defendant or otherwise agreed to by him is excluded from the computation of the 120-day period in which a trial must commence under section 103-5(a). *Cross*, 2022 IL 127907, ¶ 20.

¶ 21 While defendant's 120-day speedy-trial term was running, this court entered administrative orders explicitly tolling the statutory time restrictions. We authorized the chief judges of each circuit to continue trials until further order of this court and ordered that such continuances would be excluded from the speedy-trial computations contained in section 103-5. We found the continuances occasioned by the order served the ends of justice and outweighed the best interests of the public and defendants in a speedy trial. Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020).

¶ 22 Defendant does not dispute that he was tried in accordance with the procedure set forth in the orders, and the State does not dispute that defendant was not tried within the speedy-trial term prescribed by the statute. Thus, the timeliness of defendant's trial turns on whether the emergency administrative orders are valid.

¶ 23 Defendant contends that, because the administrative orders purporting to toll his speedy-trial term conflict with the legislatively enacted speedy-trial statute, the orders violated the separation-of-powers doctrine. The State responds that the orders prevail over the statute because they were an appropriate exercise of this court's general administrative and supervisory authority over all state courts. Ill. Const. 1970, art. VI, § 16. We agree with the State.

¶ 24 The Illinois Constitution of 1970 sets forth the authority of the legislature and the judiciary in article IV and article VI, respectively. Article IV, section 1, provides in pertinent part, "[t]he legislative power is vested in a General Assembly consisting of a Senate and a House of Representatives." *Id.* art. IV, § 1. Article VI, section 1, states "[t]he judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts." *Id.* art. VI, § 1.

¶ 25 Questions arising from the overlapping exercise of legislative and judicial power are resolved according to the Illinois Constitution's separation-of-powers doctrine. Article II, section 1, provides, "[t]he legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to

another." *Id.* art. II, § 1. Whether a supreme court rule has violated the separation-of-powers doctrine is a question of law, which is reviewed *de novo*. *In re D.S.*, 198 Ill. 2d 309, 321 (2001). The interpretation of a supreme court rule, like a statute, is also reviewed *de novo*. *People v. Marker*, 233 Ill. 2d 158, 162 (2009).

¶ 26    In both theory and practice, the separation-of-powers doctrine is intended to ensure the whole power of two or more branches of government shall not reside in the same hands. *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 32-33 (2001). But the doctrine is not intended to achieve a complete divorce among the three branches of government and does not require governmental powers to be divided into rigid, mutually exclusive compartments. *Id.* at 33. Because the " 'separation of the three branches of government is not absolute and unyielding,' " the doctrine " 'is not contravened merely because separate spheres of governmental authority may overlap.' " *Id.* (quoting *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 411 (1997)).

¶ 27    Ordinarily, it is the province of the legislature to enact laws, and it is the province of the courts to construe them. Courts have no legislative powers and may not enact or amend statutes. A court may not restrict or enlarge the meaning of an unambiguous statute. The responsibility for the justice or wisdom of legislation rests upon the legislature. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394 (1998) (citing *People ex rel. Roan v. Wilson*, 405 Ill. 122, 128 (1950)).

¶ 28    However, the administrative orders at issue invoked article VI, section 16, of the Illinois Constitution, which states in relevant part, "[g]eneral administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules." Ill. Const. 1970, art. VI, § 16. Article VI, section 7, further states, "[s]ubject to the authority of the Supreme Court, the Chief Judge shall have general administrative authority over his court, including authority to provide for divisions, general or specialized, and for appropriate times and places of holding court." *Id.* art. VI, § 7(c).

¶ 29    We have described the court's supervisory authority as

   " ' "an extraordinary power. It is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and

exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur, it will be found able to cope with them. Moreover, if required, the tribunals having authority to exercise it will, by virtue of it, possess the power to invent, frame, and formulate new and additional means, writs, and processes whereby it may be exerted. This power is not limited by forms of procedure or by the writ used for its exercise. Furthermore, it is directed primarily to inferior tribunals, and its relation to litigants is only incidental." ' " (Emphasis omitted.) *McDunn v. Williams*, 156 Ill. 2d 288, 301-02 (1993) (quoting *In re Huff*, 91 N.W.2d 613, 620 (Mich. 1958), quoting 14 Am. Jur. *Courts* § 265 (1938)).

¶ 30　　In instances like this, "[w]here matters of judicial procedure are at issue, the constitutional authority to promulgate procedural rules can be concurrent between the court and the legislature. The legislature may enact laws that complement the authority of the judiciary or that have only a peripheral effect on court administration." *Kunkel*, 179 Ill. 2d at 528. If a statute conflicts with a rule of the judiciary, a court will seek to reconcile the legislation with the judicial rule, if reasonably possible. *Id.* at 529.

¶ 31　　The supreme court, however, retains primary constitutional authority over court procedure, and the legislature violates the separation of powers "when a legislative enactment unduly encroaches upon the inherent powers of the judiciary, or directly and irreconcilably conflicts with a rule of this court on a matter within the court's authority." *Id.* at 528. When, as in this case, a statute cannot be reconciled with a rule of this court adopted pursuant to our constitutional authority, the rule will prevail. See *People v. Peterson*, 2017 IL 120331, ¶ 31 (a legislatively created exception to the hearsay rule unconstitutionally infringed on a conflicting supreme court rule); *People v. Joseph*, 113 Ill. 2d 36, 45 (1986).

¶ 32　　Defendant does not quarrel with the well-settled rule that a supreme court order concerning court procedure prevails over a conflicting statute. Instead, he argues that, because the legislature enjoys concurrent constitutional authority to enact complementary statutes concerning court procedure (*People v. Walker*, 119 Ill. 2d 465, 475 (1988)), this court's authority is limited to interpreting those procedural enactments. Defendant claims this court's administrative orders effectively read into the statute exceptions and limitations that are absent from the unambiguous

text. He further argues the legislature, by not amending the speedy-trial statute, indicated a legislative intent not to toll speedy-trial terms in response to COVID-19. By framing this court's exercise of its constitutional authority over court procedure in terms of statutory interpretation, defendant turns the separation of powers doctrine on its head. When a statute cannot be reconciled with a rule adopted pursuant to this court's constitutional authority, the rule will prevail over the statute, not the other way around. See *Peterson*, 2017 IL 120331, ¶ 31; *Kunkel*, 179 Ill. 2d at 528.

¶ 33 Defendant relies on *Newlin v. People*, 221 Ill. 166 (1906), for the proposition that the supreme court is bound by the speedy-trial statute and may not enter orders that conflict with it. In *Newlin*, this court reversed a conviction because the illnesses of certain trial judges caused the defendant's trial to be delayed in violation of the statutory time restrictions in effect at the time. *Id.* at 169.

¶ 34 As the appellate court cogently observed, *Newlin* was decided more than a century ago, under the Illinois Constitution of 1870, which did not explicitly vest the supreme court with "[g]eneral administrative and supervisory authority over all courts" as does section 16 of article VI of our current state constitution. 2021 IL App (2d) 200603, ¶ 25; see also *McDunn*, 156 Ill. 2d at 300 (the term "supervisory authority" was added to the Illinois Constitution of 1970 to emphasize the importance of the general administrative authority of the supreme court over the Illinois court system and to strengthen the concept of central supervision of the judicial system). Moreover, *Newlin* was decided before *Kunkel*, which defined the broad scope of this court's general administrative and supervisory authority over court procedure, including the scheduling of trials. 2021 IL App (2d) 200603, ¶ 25.

¶ 35 *Newlin* involved a straightforward review of the circuit court's compliance with the speedy-trial statute. The supreme court had not authorized the circuit court to operate outside the speedy-trial statute, so the circuit court was required to follow it.

¶ 36 By contrast, this appeal concerns the overlapping authority of the judicial branch and the legislative branch to regulate court procedure. Here, the circuit court was not bound by the speedy-trial statute because the supreme court had expressly permitted tolling under its "[g]eneral administrative and supervisory authority over all courts." Ill. Const. 1970, art. VI, § 16. We reject the notion that the

administrative orders concerning court procedure exceeded this court's authority explicitly conferred by the state constitution.

¶ 37    Defendant also argues this court "cannot lawfully suspend the operation of the statute on its own, without a determination that the statute itself is unconstitutional." Defendant fails to cite persuasive authority in support of his position, which is inconsistent with this court's jurisprudence on the exercise of its administrative and supervisory authority under the Illinois Constitution.

¶ 38    Defendant also contrasts this court's orders with governmental responses to COVID-19 in Kansas and Ohio. The legislatures in those states amended their speedy-trial statutes to permit their respective judicial branches to toll time restrictions. Certainly, the General Assembly could have amended section 103-5 also. See *Walker*, 119 Ill. 2d at 475 (legislative branch has "concurrent constitutional authority to enact complementary statutes" concerning court procedure). But the enactment of amendatory legislation in Kansas and Ohio does not mean the Illinois Supreme Court violated the Illinois Constitution by acting without new legislation. The general administrative and supervisory authority conferred by article VI, section 16, obviated the need for the legislature to enact legislation authorizing the supreme court to toll the speedy-trial statute in Illinois.

¶ 39    Finally, defendant argues he was entitled to a dismissal of the charges because the speedy-trial statute is a "due process safeguard" enacted to protect his rights. Although a defendant possesses both a constitutional and statutory right to a speedy trial, the constitutional and statutory rights are not coextensive. *People v. Staake*, 2017 IL 121755, ¶ 32. We emphasize that defendant alleges a statutory violation, not a due-process violation of his constitutional right to a speedy trial. Therefore, the result turns on whether the emergency orders were adopted pursuant to this court's general administrative and supervisory authority over all state courts. Ill. Const. 1970, art. VI, § 16. We have considered defendant's remaining arguments and conclude they lack merit.

¶ 40                               III. CONCLUSION

¶ 41    Several of this court's emergency administrative orders that were entered in response to COVID-19 conflict with the speedy-trial computations contained in

section 103-5 of the Code. Because the conflict arises in the context of court procedure, the court rule prevails. For the preceding reasons, the judgments of the appellate court and the circuit court are affirmed.

¶ 42          Affirmed.