2023 IL App (2d) 210110
No. 2-21-0110
Opinion filed July 7, 2023

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-134 |
| JERRIS R. JOHNSON, | ) ) ) | Honorable Donald M. Tegeler Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Jerris R. Johnson, appeals his conviction of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2018)), contending that the trial court (1) erred in denying his motion to dismiss under the section 103-5 of the Code of Criminal Procedure of 1963 (commonly known as the Speedy Trial Act (Act)) (725 ILCS 5/103-5 (West 2018)) and (2) abused its discretion by barring him from introducing evidence of the victim's mental health as it related to her credibility. Because the court neither denied defendant his statutory speedy-trial right nor improperly limited defendant in presenting evidence of the victim's mental health, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The State indicted defendant on two counts of aggravated domestic battery based on strangulation (720 ILCS 5/12-3.3(a-5) (West 2018)) (counts I and II), one count of robbery (cell phone) (720 ILCS 5/18-1(a) (West 2018)) (count III), two counts of aggravated battery on a public way (720 ILCS 5/12-3.05(c) (West 2018)) (counts IV and V), two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2018)) (counts VI and VII), and one count of theft (cell phone) (720 ILCS 5/16-1(a)(1) (West 2018)) (count VIII). Defendant opted for a jury trial.

¶ 4    Before trial, defendant filed a demand under the Act (725 ILCS 5/103-5 (West 2018)). When the trial did not commence within the time prescribed by the Act, defendant moved for dismissal. Relying on the supreme court's emergency orders suspending the time provisions in the Act because of COVID-19 (see Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020); Ill. S. Ct., M.R. 30370 (eff. Apr. 3, 2020); Ill. S. Ct., M.R. 30370 (eff. Mar. 20, 2020)), the trial court denied the motion to dismiss.

¶ 5    Also, before trial, defendant filed a motion *in limine* seeking, among other things, leave to cross-examine the victim regarding her mental health at the time she reported the incident because that evidence would be relevant to the credibility of her accusation. At the hearing on defendant's motion, defense counsel stated that she had received medical records from the State showing that the victim had gone to the hospital after the incident and reported that she was taking "an antipsychotic medication, generic Zyprexa, and lithium bicarbonate used to treat bipolar disorder." According to counsel, the victim also reported suffering from anxiety and depression. Counsel further told the court that one of the responding police officers told an emergency medical technician that the victim was a "little 10-96," meaning that she had a mental-health issue. Counsel suggested that the officer's comment "obviously len[t] credence to the idea that [the victim's] mental health *** affect[ed] her perception of what had happened and her reliability for

statements." Accordingly, counsel requested leave to cross-examine the responding police officer about the victim's behavior at the scene and to cross-examine the victim about her "state of mind" and the medications she was prescribed at the time she reported the incident. Finally, counsel asked to present evidence that the victim "ha[d] a reputation in the community for making stuff up."

¶ 6      In deciding the motion *in limine*, the trial court said it would allow defense counsel to question the responding officer about the victim's behavior at the scene but would not allow the officer to speculate as to the victim's mental health. The court further ruled that it would not permit counsel to inquire into the medications the victim was prescribed at the time she reported the incident, "unless somehow it c[ame] up that she[ ] [was] supposed to be on medication and she was not taking medication and that affected her." Nor would the court permit counsel to inquire about the victim's mental health at the time she reported the incident, because none of the mental disorders counsel mentioned would impact the victim's ability to perceive reality. Finally, the court found it premature to rule on defendant's request to introduce evidence that the victim had a reputation for untruthfulness. Such evidence "could possibly come in," but the court would "see what happen[ed] at the trial in that respect." The court instructed defense counsel that she should approach the bench and obtain a ruling before she sought to introduce reputation evidence.

¶ 7      The court summarized its ruling on the motion *in limine*:

> "So you get into the officer, his interactions with her and whether or not, you know, his questions and the answers, what they were, you know, how she was behaving emotionally and things. He can't obviously guess as to any mental[-]health things. You cannot get into the prescriptions or any of her mental health at this point. As I said, I'll wait to see if the reputation testimony comes in if it's even appropriate at that point."

¶ 8 Defendant filed a second motion *in limine* to reconsider the trial court's ruling on his initial motion *in limine*. Defendant asserted that "[n]ew information ha[d] come to light that ma[de] [the victim's] mental health unequivocally a central question in th[e] case." Specifically, defendant pointed to two police reports indicating that the victim had fabricated claims of domestic battery. Thus, according to defendant, the reports "demonstrate[d] recent, active delusional and persecutory thinking." Defendant also claimed that the reports generally alluded to defendant's prior paranoid and delusional behavior and "known history" of fabricating incidents. Based on these reports, defendant asked the court to reconsider its ruling barring defendant from cross-examining the victim about her mental health. Defendant also asked the court to permit police officers to testify that the victim had a reputation for untruthfulness based on her mental-health issues.

¶ 9 At the hearing on the second motion *in limine*, defense counsel reiterated her request to cross-examine the victim about her mental health and how it affected her ability to perceive reality. Counsel also requested leave to call police officers to opine that the victim was "untruthful due to her delusional behavior and/or that she ha[d] a reputation in the community for untruthfulness stemming from her delusional mental[-]health disorder."

¶ 10 In ruling on the motion *in limine*, the trial court stated that it would allow defense counsel to "get into whether or not [the victim was] on medication." When defense counsel responded that the court had previously ruled that she could not so inquire, the court replied that it would indeed let counsel ask the victim whether "she [was] on medication and whether she was not." The court added that, if the victim answered that "she [was] on medication," then counsel would have to "live with the answer." The court further allowed counsel to ask the victim whether "she's ever been diagnosed with a mental illness that would affect her ability to perceive the facts as they were

occurring." If the victim answered no, counsel would have to "live with her answer unless [counsel had] someone to testify otherwise."

¶ 11 The court also denied defendant's request to call police officers to testify to whether the victim was delusional. When counsel asked if she could cross-examine the victim "about *** some of her prior delusions[,]" the court answered,

> "It depends on what her answer is. Ask her if she's ever been diagnosed with a delusional—you know, whether or not there has ever been a diagnosis of delusions. If she says no, you may be stuck. If she says yes, I will see how far I let you go."

The court also reminded defense counsel that only two weeks remained until trial and that the court was not inclined to continue the trial to allow counsel to locate doctors to testify about the victim's mental health. Counsel responded that she did not need to locate any doctors, because she was already aware of doctors who treated the victim and who knew what medications she was prescribed at the time she reported the incident. When the court asked if these doctors had been identified as witnesses, counsel responded that they were on her witness list. The court commented, "Well, let's see if they show up."

¶ 12 The following facts were developed at defendant's jury trial. The victim testified that, on January 22, 2020, at around 1 a.m., she and defendant were sitting in her car in a parking lot in Elgin. They began to argue, and defendant started punching her in the face with a closed fist. According to the victim, defendant also bit her hand and squeezed her neck until she lost consciousness. The victim escaped to a Walgreens, where someone called 911. Defendant fled in another direction.

¶ 13 According to the victim, her cell phone was in the car. However, she could not locate it after the incident.

¶ 14    The victim was taken to a hospital. Photographs of her injuries showed blood and bruises on her face and neck, bite marks on her arm and leg, and blood on her hand.

¶ 15    The victim identified two recordings of telephone calls defendant made to her from jail. In those calls, defendant encouraged the victim not to appear at his trial.

¶ 16    The victim also testified about two prior incidents in which she and defendant argued and he physically abused her. On the first occasion, defendant punched her several times, knocking a tooth loose. In the second incident, defendant beat her, grabbed her arm, and pushed her to the ground. She reported both incidents to the police. She admitted that, after officers examined her for injuries, they refused to arrest defendant.

¶ 17    During cross-examination, defense counsel asked the victim whether she had any psychotropic medications in her car on January 22, 2020. The victim answered no and that she was "just taking regular medication" at the time. Counsel then asked the victim if she had told hospital personnel that she was taking olanzapine (the generic form of Zyprexa) and lithium. The victim answered, "That's what I'm taking." When counsel asked if lithium was a mood stabilizer, the court sustained the State's objection. When counsel asked the victim if she had been diagnosed with bipolar disorder, the court again sustained the State's objection.

¶ 18    Dr. Maciej Padowski, an emergency room physician, testified that he treated the victim after the incident. Defense counsel cross-examined Padowski but never questioned him about the victim's mental health or whether she had been prescribed any psychotropic medication. After Dr. Padowski testified, defense counsel released him from her subpoena.

¶ 19    Before defendant's case-in-chief, defense counsel made an offer of proof. She noted that the trial court "did not let [her] get into some of the mental[-]health issues with [the victim]." She added that she would have liked to have asked Dr. Padowski whether the victim was taking

olanzapine, an antipsychotic medication, and lithium, a mood stabilizer. The court responded that it had made no such ruling as to Dr. Padowski, because counsel had "never bothered to even ask the question." Counsel then stated that she would ask emergency room nurse Lucas Hayes about the victim's medications. The court responded, "We'll see what happens."

¶ 20    Hayes testified for the defense that he treated the victim after the incident. He did not recall if the victim reported being on any psychotropic medication. After reviewing his report, Hayes could not recall what, if any, medications the victim was prescribed.

¶ 21    Debra Narvaiz, defendant's former girlfriend, testified for the defense that she knew the victim from the neighborhood. According to Narvaiz, the victim's reputation for honesty and truthfulness was "not good" and that she was "known to tell stories."

¶ 22    The jury found defendant guilty of counts VI and VII (domestic battery) and not guilty of all other charges. The trial court merged count VII into count VI for sentencing purposes. Defendant filed a motion for a new trial claiming, among other things, that the trial court erred in sustaining the State's objections to defense counsel's cross-examination of the victim about her psychotropic medication use. The trial court denied the motion for a new trial and sentenced defendant to four years' imprisonment. Defendant, in turn, filed this timely appeal.

¶ 23                                II. ANALYSIS

¶ 24    On appeal, defendant contends that (1) the Illinois Supreme Court violated the separation-of-powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, § 1) when it issued the COVID-19-related emergency orders tolling the time restrictions in the Act (see 725 ILCS 5/103-5 (West 2018); see also Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020); Ill. S. Ct., M.R. 30370 (eff. Apr. 3, 2020); Ill. S. Ct., M.R. 30370 (eff. Mar. 20, 2020)) and (2) the trial court abused its discretion

in barring him from cross-examining the victim and Dr. Padowski about the victim's mental health and the psychotropic medications she was using at the time she reported the incident.

¶ 25    We can readily dispose of defendant's speedy-trial argument. On March 30, 2022, our supreme court granted leave to appeal in *People v. Mayfield*, 2021 IL App (2d) 200603 (see *People v. Mayfield*, No. 128092 (Ill. Mar. 30, 2022)), where we held that the supreme court's emergency orders tolling the time restrictions under the Act did not violate the separation of powers (*Mayfield*, 2021 IL App (2d) 200603, ¶¶ 19-22). Defendant here requested that we hold this appeal in abeyance pending the supreme court's decision in *Mayfield*, because that decision would likely control the outcome of the speedy-trial issue in this case. On May 2, 2022, we issued an order holding this appeal in abeyance pending the *Mayfield* decision. See *People v. Johnson*, No. 2-21-0110 (May 2, 2022) (unpublished minute order).

¶ 26    On March 23, 2023, the supreme court issued its opinion. See *People v. Mayfield*, 2023 IL 128092. In affirming our decision, the supreme court held that its emergency orders tolling the Act's time restrictions did not (1) exceed its administrative and supervisory authority to regulate court procedures or (2) violate the separation of powers. *Mayfield*, 2023 IL 128092, ¶¶ 3, 27-38. Thus, the pretrial delay in that case did not violate the Act. See *Mayfield*, 2023 IL 128092, ¶ 41.

¶ 27    *Mayfield* controls because its holding resolved the precise issue raised here. Thus, there was no speedy-trial violation in this case.

¶ 28    We next address whether the trial court abused its discretion in barring defendant from cross-examining the victim and Dr. Padowski about the victim's mental health and her use of psychotropic medication at the time she reported the incident.

¶ 29    We begin with the trial court's ruling regarding defendant's cross-examination of the victim. A criminal defendant has a constitutional right to confront the witnesses against him,

including the right to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 54 (2004). However, a defendant's right to confront a witness is not absolute (*People v. Bean*, 137 Ill. 2d 65, 93 (1990)), and the trial court may limit cross-examination to prevent irrelevant inquiries or questioning that "threaten[s] to distract the jury from the actual issues by unduly emphasizing details of a witness'[s] life" (*People v. Printy*, 232 Ill. App. 3d 735, 745 (1992)). A trial court has broad discretion to limit the scope of cross-examination, and we will not reverse the court's restriction of cross-examination absent an abuse of discretion resulting in manifest prejudice. *People v. Price*, 404 Ill. App. 3d 324, 330 (2010).

¶ 30　Although a witness's mental-health history " 'is relevant as it relates to credibility, and is thus a permissible area of impeachment, before such evidence may be introduced, its relevance must be established.' " *People v. Baldwin*, 2014 IL App (1st) 121725, ¶ 52 (quoting *People v. Plummer*, 318 Ill. App. 3d 268, 279 (2000)). The party seeking to introduce a witness's mental-health history must establish its relevance to the witness's credibility. *Baldwin*, 2014 IL App (1st) 121725, ¶ 52.

¶ 31　Here, defendant contends that the trial court improperly limited his cross-examination of the victim regarding her mental health, which defendant contends was relevant to her credibility. We disagree that the court erred. In ruling on defendant's second motion *in limine*, the court said that defendant could ask the victim which medications she was prescribed and whether she was ever diagnosed with "a mental illness that would affect her ability to perceive the facts as they were occurring." At trial, defense counsel asked the victim if she was taking olanzapine and lithium, to which the victim answered yes. Although the court sustained the State's objection to questions about whether lithium was a mood stabilizer and whether the victim had been diagnosed with bipolar disorder, those questions did not necessarily relate to the victim's ability to perceive

or her credibility. Thus, the court did not abuse its discretion in limiting defendant's cross-examination of the victim regarding her mental health and any prescribed medications.

¶ 32    Nor did the trial court abuse its discretion as to defendant's cross-examination of Dr. Padowski. Defendant bases his argument on a false premise—that the court's "previous rulings," *i.e.*, rulings on the motions *in limine* and the cross-examination of the victim, precluded defendant from asking Dr. Padowski which medications the victim was using at the time she reported the incident.

¶ 33    A motion *in limine* permits a party to obtain a pretrial order admitting or excluding evidence. *People v. Gliniewicz*, 2018 IL App (2d) 170490, ¶ 32. "A motion *in limine* should be as specific as possible and set out all relevant facts so that the trial court can properly assess the relevance and admissibility of the evidence at issue as well as any potential unfair prejudice." *Gliniewicz*, 2018 IL App (2d) 170490, ¶ 32. A pretrial ruling on a motion *in limine* is always subject to reconsideration at trial because the trial court rules on it in a vacuum, before hearing the trial evidence that might justify either admission or exclusion of the proposed evidence. *Gliniewicz*, 2018 IL App (2d) 170490, ¶ 32. "Generally, a trial court's ruling on a motion *in limine* will not be reversed absent a clear abuse of discretion." *Gliniewicz*, 2018 IL App (2d) 170490, ¶ 32. "An abuse of discretion exists only where the trial court's decision is arbitrary, fanciful, or unreasonable ***." *People v. Ramsey*, 239 Ill. 2d 342, 429 (2010).

¶ 34    In ruling on defendant's initial motion *in limine*, the trial court told defendant that he "cannot get into the [victim's] prescriptions or any of her mental health *at this point*." (Emphasis added.) The emphasized language indicated that the court's ruling was neither final nor foreclosed defendant from later seeking to introduce such evidence. Indeed, defendant filed a second motion

*in limine*, again seeking leave to question the victim about her mental health and how it affected her ability to perceive reality.

¶ 35    In ruling on the second motion *in limine*, the trial court stated that it would allow defendant to "get into whether or not [the victim was] on medication." When defense counsel responded that the court had previously ruled that she could not so inquire, the court replied that it would indeed let counsel ask the victim whether "she [was] on medication and whether she was not." The court added that, if the victim answered that "she [was] on medication," then counsel would have to "live with the answer." The court further allowed counsel to ask the victim whether she had ever been diagnosed with "a mental illness that would affect her ability to perceive the facts as they were occurring." If the victim answered no, then counsel would have to "live with her answer unless [counsel had] someone to testify otherwise." The court also permitted counsel to ask the victim if she were ever diagnosed as delusional; if she answered yes, the court would determine how far to let defendant pursue that matter. Further, the court reminded counsel that only two weeks remained until trial and that the court was not inclined to continue the trial to allow counsel to locate doctors to testify about the victim's mental health. Counsel responded that she did not need to locate any doctors, because she was already aware of doctors who treated the victim and who knew what medications she was prescribed at the time she reported the incident. When the court asked if these doctors had been identified as witnesses, counsel responded that they were on her witness list. The court commented, "Well, let's see if they show up."

¶ 36    The trial court's ruling on defendant's second motion *in limine* allowed defense counsel to ask Dr. Padowski whether the victim was prescribed psychotropic medications and whether she was diagnosed with a mental illness that could have affected her ability to perceive reality. Further, as with any ruling on a motion *in limine*, defendant remained free to seek, at trial, reconsideration

of the court's ruling on either of his motions *in limine*. Along those lines, we cannot reasonably construe the trial court's ruling on defendant's cross-examination of the victim as a reversal of the court's ruling on defendant's second motion *in limine*. Consistent with that ruling, and without the State's objection, defense counsel asked the victim if she had told hospital personnel she was taking lithium and olanzapine. The court did not allow counsel's follow-up questions, but that was consistent with the terms of the ruling on the second motion *in limine*.

¶ 37    Defense counsel did not question Dr. Padowski because she mistakenly believed the court had barred her from doing so. When she made an offer of proof, the trial court reiterated that it had not barred her from questioning Dr. Padowski about the victim's psychotropic medications. However, instead of recalling Dr. Padowski, counsel opted to question Hayes about the victim's medications. The trial court did not abuse its discretion because it did not have the opportunity to exercise its discretion: defense counsel never sought to elicit Dr. Padowski's opinion about the victim's psychotropic medications. However, the trial court did not prohibit defendant, either before or during trial, from questioning Dr. Padowski about the victim's psychotropic medications. The defendant committed a procedural default by failing to ask the question or seeking leave to ask the question. " '[P]rocedural default refers to the failure to adequately preserve an issue for later appellate review.' " *People v. Whitfield*, 217 Ill. 2d 177, 187 (2005) (quoting *People v. Blair*, 215 Ill. 2d 427, 457 n.3 (2005) (Freeman, J, dissenting, joined by McMorrow, C.J., and Kilbride, J.)).

¶ 38    For the foregoing reasons, we hold that (1) no speedy-trial violation occurred and (2) the trial court did not improperly limit defendant in cross-examining the victim or Dr. Padowski about the victim's mental health or her psychotropic medications.

¶ 39                                    III. CONCLUSION

¶ 40    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 41    Affirmed.

*People v. Johnson*, **2023 IL App (2d) 210110**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 20-CF-134; the Hon. Donald M. Tegeler Jr., Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Fletcher P. Hamill, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Max C. Boose, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |